[Civ. No. 12627. First Dist., Div. One. June 23, 1944.]

THOMAS J. CULLIGAN, JR., Respondent, v. S. J. LEIDER et al., Appellants.

Ross & Ross and Duncan A. McLeod for Appellants.

Kirkbride & Wilson and Arthur J. Harzfeld for Respondent.

WARD, J.—This is an appeal by defendants from a judgment awarding plaintiff $5,000, the amount of a deposit made

by him under a written agreement to purchase real property.

The property had been deeded to defendants and to Moe H. Levitt and Frances M. Levitt by The Citizens National Trust & Savings Bank of Los Angeles, under date of November 20, 1939, the deed "Reserving unto the grantor, its successors and assigns, the easements for water lines, sewer lines and septic tanks as now in existence on said hereinbefore described real property; also reserving unto the grantor, its successors and assigns, rights of way for easements for sewer and water lines across the hereinbefore described real property, the location of which rights of way grantor reserves the right to designate." The defendants subsequently acquired the interest of the Levitts in the property.

In the spring of 1941, plaintiff, who for some years had been engaged in the business of buying tracts of land, subdividing and building, became interested in the purchase of a portion of the property through the efforts of a real estate agent, Robert Marshall. A deposit receipt and agreement dated August 5, 1941, was signed by all parties, plaintiff depositing with defendants in connection therewith, $5,000 on account of the purchase price of $60,000. This receipt provided "Cash on the consummation of this transaction. Said property to be free and clear of all liens and encumbrances save and excepting current taxes and restrictions and easements of record." It also provided "that in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the seller, be retained as liquidated and agreed damages. That in the event the title to said property shall not prove marketable and said seller shall not perfect, or be able to perfect same within ninety (90) days from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligations hereunder." This deposit receipt was on August 15th voided by the parties, who had in the meantime caused Marshall, the real estate agent, to prepare a second deposit receipt. This was dated August 12th and was mailed to defendants by Marshall with a letter bearing the same date. Marshall's letter stated that the deposit receipt was enclosed "in the form that you wanted."

With reference to the easements, the second deposit receipt provided "Said property to be free and clear of all liens and

encumbrances save and excepting current taxes, restrictions and existing easements of record." The word "existing" had not been a part of the first deposit receipt.

There was also enclosed with the communication and deposit receipt the preliminary report of the abstract company, and Marshall called defendants' attention to the exception therein noted pertaining to the reservation by the bank of the rights of way above mentioned, stating in his letter in that regard: "You can appreciate that this is now an encumbrances (sic) that must be removed before the property is in a position to be transferred, therefore suggest that you secure from The Citizens National Bank a quitclaim deed covering this item."

It appears from the record that defendants received the above letter from Marshall dated August 12, 1941, with its enclosures, on the 13th. The parties met in plaintiff's office on the 15th of August and the second deposit receipt was duly executed, its date of August 12th being changed to August 5th to coincide with the date of the original agreement. The first deposit receipt was, as stated, cancelled.

The property had been used as a golf course and the roving easement did not interfere with its use by defendants. On the other hand, until the bank should designate the exact location of the utility easements the land, from a practical standpoint, was useless for subdivision and housing purposes.

The defendants executed and deposited with the title company in escrow a deed to plaintiff, but failed to clear the title of "liens and encumbrances save and excepting current taxes, restrictions and existing easements of record" notwithstanding Marshall had the period of performance extended an additional thirty days. Nor did plaintiff ever deposit with the title company the balance of the purchase price, although he offered to do so at any time, even upon the termination of the one hundred twenty day period, upon performance by defendants of the terms of the contract on their part.

During the next several months a great deal of correspondence was exchanged, and conferences and discussions had, between attorneys representing the parties in an effort to obtain from the Los Angeles bank a quitclaim deed with reference to the easements.

On December 9, 1941, the title company advised the real estate agent that defendants had withdrawn the deed and other papers from escrow, and defendants' attorney notified plain-

tiff that the deed had been withdrawn for "failure to proceed in good faith with the closing of the deal ... The sum heretofore deposited by you ... is being retained ... in accordance with the deposit receipt." Shortly thereafter plaintiff made a demand upon defendants for the return of the $5,000 paid on account, and later commenced this action to recover such deposit.

With reference to the letter from Marshall to defendants and cross-complainants, dated August 12th, which letter specifically set forth the reservation of the easements to the bank and stated that such encumbrance "must be removed before the property is in a position to be transferred," which letter was accompanied by the second deposit receipt and the preliminary report of the title company, it is defendants' contention that the deposit receipt was received by them the next day, but that the letter came some time afterward. There is testimony that the letter of transmission accompanied the documents, and the court so found. When the parties met on the 15th of August and signed the second deposit receipt, presumably defendants were acquainted with the terms of the document, emphasized by the communication from Marshall.

Defendants' cross-complaint to quiet title prayed that they be declared to be the owners in fee of the property, and that plaintiff has no right, title or interest therein. As plaintiff does not claim any interest in the property the judgment in this respect is immaterial on appeal.

As stated, judgment was ordered for plaintiff in the sum of $5,000 with interest. It also decreed that defendants and cross-complainants are entitled to possession of the property free of any claim by plaintiff.

The trial court found that the location of the easements had not been designated and therefore constituted an encumbrance which should have been removed by the sellers. Appellants contend that the reservation that the grantor bank shall have the right to locate easements for sewer and water lines across the property falls within the provisions of the deposit receipt "excepting ... existing easements of record."

Some confusion appeared in the record relative to appellants' motion to strike out all evidence attempting to vary the terms of the written contract and all evidence in reference to damages.

Parol evidence bearing on the circumstances surrounding the execution of the contract had been introduced by plaintiff subject to defendants' motion to strike on the ground that

such evidence varied the terms of a written instrument. At the conclusion of the case, defendants renewed their motion, and also moved that all evidence with reference to damages be stricken. The record, as originally before this court, simply showed a clerk's minute order as follows: "Motion Granted."

■ While the appeal was pending in this court, but before the case had been submitted, plaintiff obtained an order from the trial court, after proper notice and hearing, correcting the record. This order is signed by the trial judge. It recites that the statement in the minute order, "Motion Granted," incorrectly stated "the intention and order of the Court actually made pursuant to defendants' motion to strike appearing in said minutes; it having been the intention and order of the Court to strike only such evidence as referred to damages sustained by plaintiff and cross-defendant other than damages sustained by reason of retention of the deposit of $5,000.00." The Court then made this order:

"Now, therefore, it is hereby ordered that the minutes of the Court . . . be, and the same are, hereby corrected so that the words 'Motion Granted' be changed to read as follows:

"It is hereby ordered that the above motion to strike out evidence be, and it is hereby, granted insofar only as it refers to evidence in reference to damages, other than damages sustained by plaintiff and cross-defendant by reason of the retention by defendants and cross-complainants of the deposit of $5,000.

"The Court finds that no evidence has been introduced by plaintiff and cross-defendant to vary the terms of the written contract, and on said grounds hereby orders that no evidence, other than that in reference to damages, as aforesaid, be stricken out.

"It is further ordered that the Clerk of this Court correct the said minutes in accordance herewith."

It must be assumed that the trial court was correcting clerical and not judicial error since the judge recites that the minutes ". . . incorrectly state . . . [the] order of the Court actually made . . ." (*Bastajian* v. *Brown*, 19 Cal.2d 209 [120 P.2d 9].) Where the clerk's entry is not in accord with the order actually pronounced by the judge, the error is clerical rather than judicial. In the Bastajian case the court said (p. 216): ". . . where the judgment as signed does not express the actual judicial desire or intention of the court at all, but is contrary thereto, the signing of such purported

judgment is a clerical error rather than a judicial one.''
█ The court has inherent power to make its records speak
the truth even though the matter is on appeal. (*Carter* v.
*J. W. Silver Trucking Co.*, 4 Cal.2d 198 [47 P.2d 733]; *Wilson* v. *Nichols*, 55 Cal.App.2d 678 [131 P.2d 596]; *Carson* v.
*Emmons D. & S. Moving Co.*, 18 Cal.App.2d 326 [64 P.2d
176].)

█ That the clerical error did not appear on the face of
the record does not preclude the court from correcting the
entry. (*King* v. *Emerson*, 110 Cal.App. 414 [288 P. 1099,
294 P. 768]; *Carter* v. *J. W. Silver Trucking Co., supra.*)

█ The argument made by appellant that the order is
void because not expressly made *nunc pro tunc* is without merit in view of the following statement from *Carpenter* v. *Pacific Mut. Life Ins Co.*, 14 Cal.2d 704, 707
[96 P.2d 796]: ''It is the long-settled rule that courts of record in this state have inherent power to make a correction
*nunc pro tunc or otherwise,* of clerical errors and misprisions
in their records, in order that such records conform to the
facts and speak the truth.'' (Italics added.)

The record, as corrected, therefore is the one upon which
this court must decide the appeal.

█ The view of the trial court—that since the roving
easements had not been located they did not in fact exist
under the agreement herein must be upheld. There is some
ambiguity in the use of the word ''existing.''

The second deposit instrument refers to encumbrances, restrictions and existing easements. The defendants held the
property from the Los Angeles bank with certain reservations for water lines, sewer lines and septic tanks ''now in
existence.'' There was also reserved unto the grantor, its
successors, etc., the right to designate the location of ''rights
of way for easements for further sewer and water lines.''
Whether ''existing'' referred to easements as previously located, or the right to designate such locations was an important question. Parol evidence was admissible, not to vary,
but to interpret the use and meaning of the word in the
document.

The holding in *Body-Steffner Co.* v. *Flotill Products*, 63
Cal.App.2d 555 [147 P.2d 84] is applicable to this case. The
court said (p. 562): '' 'The true interpretation of every
instrument being manifestly that which will make the instru-

ment speak the intention of the party at the time it was made, it has always been considered an exception, or perhaps a corollary, to the general rule above stated, that when any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument itself.' (*Sandford* v. *Newark etc. R. R. Co.*, 37 N.J.L. 1, 3, as quoted in *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221, 225 [41 P. 876].)''

In the present case the court found ''That defendants have failed to clear said title of said encumbrance within 120 days after the execution of said agreement.'' The evidence in question showed that the previous attorney for defendants upon receipt of the deposit agreement wrote in long hand: ''check accepted subject to checking the description on the property . . .'' The original deposit receipt was not satisfactory and resulted in the drawing of a second document. A letter which accompanied the deposit receipt and preliminary report from the title company called attention to the easements which ''must be removed before the property is in a position to be transferred.'' There is testimony that plaintiff would not purchase the property subject to the easements, and so the first deposit receipt was executed. After the second receipt was executed both parties endeavored to clear the propery of the roving easement, but were unsuccessful. The evidence in some respects is conflicting, but the trial court resolved the conflict in favor of plaintiff.

■ The deposit agreement contained a provision that in the event the title to the property should ''not prove marketable and the said seller shall not perfect . . . same . . . the purchaser 'shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder.' '' If there was any reasonable doubt relative to litigation regarding the title, then the property was not marketable and respondent was entitled to a return of the $5,000 deposit. (*Muller* v. *Palmer*, 144 Cal. 305 [77 P. 954].) In *Allen* v. *Globe Grain & Milling Co.*, 156 Cal. 286, 290 [104 P. 305], the court said: ''It is settled law in this state that where the provisions of a contract for the sale of real estate are such as to call for a 'perfect title,' the purchaser is entitled to a title free from reasonable doubt and fairly deducible of record. (See *Gwin* v. *Calegaris*, 139 Cal. 384 [73 P. 851],

and cases there cited. *Peckham* v. *Stewart,* 97 Cal. 147 [31 P. 928]. See, also, *Title etc. Co.* v. *Kerrigan,* 150 Cal. [289] 305 [119 Am.St.Rep. 199, [8 L.R.A.N.S. 682] 88 P. 356].) The provisions in the contract in the case at bar were, as we have seen, for a 'valid title,' for a title that was not 'defective,' for a 'perfected' title in the event that on examination the title was found to be defective. It was expressly provided 'that if the title is defective and it cannot be perfected within the time above specified this contract will thereupon become null and void.' These provisions practically called for a 'perfect title' to the same extent as if the precise words 'perfect title' had been used. When these provisions are read in connection with the provision for 'examination of the title,' which clearly referred to an examination of the public records, we cannot doubt that the parties were stipulating for 'a good title by the record.' (See *Gwin* v. *Calegaris,* 139 Cal. 384 [73 P. 851].) " Under all of the circumstances and the law applicable to the facts plaintiff was entitled to the return of the deposit.

The option designated as a deposit receipt contained a clause fixing the amount of liquidated damages and a provision that if the property was not marketable the purchaser should have the option of "receiving back" the deposit and should be "released from all obligations." *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199], relied upon by appellants, merely holds that a purchaser may not maintain an action to recover a deposit paid under a contract for the purchase of land when default by him is unexcused. It holds that under such circumstances a vendor may rest on his contract and retain to his own use the money previously paid by the vendee. In brief, the rights of the parties are determined by the contract. In the Glock decision (p. 4) it was stated that the averments praying for equitable relief were "without the slightest averment or the shadowiest proof in excuse of plaintiff's breach of contract." In the present case the agreement contained the provision that upon failure of the seller to perfect the title within a specified time the purchaser had a right to demand the return of the deposit. The gist of the decision in the Glock case is there was no excuse for the purchaser's default. In the present case the failure of the purchaser to deposit the full amount was excused by the inability or refusal of defendants to tender a marketable title. We do not deem it

necessary to distinguish other cases cited by appellants based upon the Glock case.

There is no claim by appellants herein that if damages had been fixed in an amount other than as specified in the contract the judgment would have been rendered in a less sum. All evidence covering actual damages was on motion of defendants stricken from the record. We are therefore precluded from discussing that phase of the case.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.