[Civ. Nos. 3971, 3977.   Fourth Dist.   Jan. 23, 1950.]

DOROTHY F. WARD et al., Plaintiffs and Appellants, v. ANGELA C. DOWNEY et al., Defendants and Appellants; THE FIRST NATIONAL BANK OF VISTA (a National Banking Association), Intervener.

Price, Nottbusch, Cory & Schwartz for Plaintiffs and Appellants.

Paul E. Iverson and John H. Dawson for Defendants and Appellants.

Wright, Thomas, Dorman & Fox for Intervener.

MUSSELL, J.—This is an action for specific performance of an escrow agreement and contract for the purchase of real property.  Plaintiffs, Dorothy F. Ward and Grace E. Frame, as sellers, and defendants, Angela C. Downey and John F. Downey, Jr., as buyers, on July 10, 1947, executed two written agreements; one designated "Offer to Purchase Real Estate"

and the other "Escrow Instructions," relating to ranch property near Vista. The agreements provided that the escrow through which the transaction was to be consummated was to close on October 10, 1947, and that time was of the essence. The total purchase price was $63,000. Defendants paid the plaintiffs $2,500 cash outside of escrow, deposited $3,500 into an escrow at the First National Bank of Vista, and delivered checks totaling $37,000 to one of the officers of J. H. Fotheringham, Inc., the real estate agent, for deposit into the escrow when it was ready to close. The defendants obtained a commitment from the Bank of America for the balance of the purchase price ($20,000), to be secured by a first trust deed on the property involved.

On October 10, 1947, the title to the property was in the names of plaintiffs and Robert E. Frame, as joint tenants. Robert E. Frame died in August, 1946, in Illinois, and proceedings to determine his death and to terminate the joint tenancy were commenced by the plaintiffs on the 10th day of September, 1947, resulting in a decree determining the death of the joint tenant, signed by the court on the 17th day of October, 1947. These proceedings were commenced on advice of the Union Title Insurance and Trust Company to determine, among other things, the amount of inheritance tax and federal estate tax due and to supply the company with a receipt for the payment of any tax so found due.

On October 8, 1947, the title company, by letter, informed the First National Bank of Vista, the escrow agent, that a title policy could not be issued until a clearance of a possible lien for federal estate tax was received. The title company requested a verified statement of the value of the property outside of the State of California owned by Robert E. Frame at the time of his death. On October 17, 1947, plaintiffs secured and supplied to the title company an affidavit of Saul A. Epton containing the statement required as to property owned by Robert E. Frame. On October 8, 1947, an officer of the First National Bank of Vista informed the Bank of America that because the plaintiffs had failed to supply the necessary documents to clear the title to the property from a possible lien for federal estate taxes, the escrow could not close on October 10, 1947, and that the title could not be cleared until the 17th or 24th of that month.

On October 11, 1947, the defendants served on the escrow holder a written notice, stating that they were terminating the escrow and demanded the return of the money deposited

by them for the reason that the sellers had been unable to comply with the terms of the escrow instructions, and that they, the defendants, did not desire to grant them any additional time for that purpose.

The plaintiffs then, on October 15, 1947, instituted this action for specific performance. On the 19th day of January, 1949, an interlocutory decree was entered for specific performance of the offer to purchase and the escrow instructions, awarding the plaintiffs damages for monies expended by them for the care and maintenance of the property and interest on the balance of the purchase price. From this decree the defendants appealed. On the 30th day of June, 1949, plaintiffs obtained a final judgment in the action awarding them the sum of $10,081.16 damages by reason of the failure of the defendants to specifically perform the contract as provided in the interlocutory decree. Both the plaintiffs and defendants appealed from this final judgment.

The plaintiffs complain that the court should have provided by its decree that the sellers had a lien as vendors upon the property as security for the unpaid balance of the purchase price, plus amounts allowed for care and maintenance of the property, interest and court costs. The defendants contend that the trial court erred in finding that the plaintiffs had fully performed every act incumbent upon them to be performed before October 10, 1947, when the evidence was that the plaintiffs had failed to supply the documents necessary to pass a marketable title or to enable the title company to write its title policy until October 17, 1947; that the court erred in granting a judgment for specific performance when the plaintiffs did not fully comply with their contract on the due date and in failing to find that the defendants had terminated the escrow on October 11, 1947, when written notice of termination was given in accordance with the terms of the escrow instructions. There are numerous other specifications of error which we conclude are not material to the inquiry here, in view of our conclusion that the plaintiffs, under the circumstances here shown, were not entitled to a decree of specific performance. By stipulation of the parties, the two appeals have been consolidated.

The pertinent provisions of the offer to purchase real estate here involved and signed by the purchasers and the sellers are as follows:

"Title to said premises is to be shown marketable and free of all encumbrances (except as above mentioned and restric-

tions and rights of way of record) by the evidence of a standard form of Policy of Title Insurance issued by Union Title Insurance and Trust Company, with liability in amount of sale price, to be procured by seller at his expense, which policy shall be delivered to purchaser upon recordation of grant deed conveying said property to the undersigned.''

The escrow instructions signed by the parties provided in part as follows:

''I will also execute and deliver to you before the time limit hereinafter named any instruments, including notes secured by encumbrances I create, and additional funds required from me to enable you to comply with these instructions, all of which you are authorized and instructed to use provided on or before October 10, 1947, instruments have been filed for record entitling you to procure assurance of title in the form of a policy of title insurance issued by Union Title Insurance and Trust Company subject to all the exceptions, terms and conditions contained therein, with liability of issuing title company limited to not less than $63,000.00 . . .''

The escrow instructions further provided as follows:

''In the event that the conditions of this escrow have not been complied with at the time provided herein, you are instructed, nevertheless, to complete the same at any time thereafter as soon as the conditions (except as to time) have been complied with, unless I shall have made written demand upon you for the return of money and/or instruments deposited by me.''

It is apparent from the record before us that the plaintiffs failed to supply the instruments necessary to enable the title company to issue its title policy until October 17, 1947, seven days after the date fixed for the closing of the escrow. The letter written by the title company on October 8th clearly indicated that it required a clearance of the federal estate tax before closing the escrow, and in a later letter, dated October 15, 1947, the title company notified the escrow holder in part as follows:

''The matter of possible inheritance tax and possibility of federal estate tax that may be due by reason of the death of Robert E. Frame, has been taken up with our legal department and in their opinion it will be necessary to bring an action in this state, terminating the joint tenancy between the Frames and Wards and determining the amount of inheritance tax and federal tax, if any, that will be due.

"It will also be necessary, if such tax is found to be due, to have the proper receipt exhibited for such tax."

The action brought to terminate the joint tenancy and to determine the taxibility of the property was not reduced to judgment until October 17, 1947, and on October 22, 1947, in a letter to the escrow holder, the title company stated in part as follows:

"Referring to your letter of October 21st regarding the 'Downey-Frame & Ward' Escrow in which you . inquire whether we could have passed title on this property on October 10, on that date we had a clearance of all matters involving this title with the exception that we required a statement of value of any and all property owned by Mr. Frame outside of the State of California, and as we more fully set forth in our letter of October 8th."

There was testimony by the vice-president of the title company that it was the custom of the company on October 10, 1947, that the seller be required to place all of the documents in escrow before the buyer was asked to deposit the purchase price. In the instant case, the plaintiffs executed a grant deed, which they delivered to the escrow holder and it was by them delivered to the title company on August 13, 1947, but it was not then or thereafter recorded. It was not until October 22, 1947, that the title company advised the escrow holder that they had the necessary clearance enabling them to close the matter with the exception of the action filed herein on October 15, 1947, for specific performance.

Before the plaintiffs, as sellers, could compel the defendants to perform their part of the agreement, the plaintiffs must have fulfilled all conditions precedent imposed upon them and must have been able to fulfill and must have offered to fulfill all such conditions. (*Lifton* v. *Harshman*, 80 Cal.App.2d 422, 433 [182 P.2d 222]; *Mayer* v. *Beondo*, 83 Cal.App.2d 665, 667 [189 P.2d 327, 190 P.2d 23].) In *Del Porto* v. *O'Donnell*, 84 Cal.App.2d 548, 550 [190 P.2d 955], it was held that neither party to a written contract to sell real property could maintain an action for its performance without having performed the conditions to be performed by him. (Citing cases.)

The requirement of the offer to purchase that the title to the premises was to be shown "marketable and free of all encumbrances" was not met by the plaintiffs as of the date set for the closing of the escrow. It seems quite clear to us that, in view of the failure of plaintiffs to submit documents to the title company enabling it to determine the possibility of

an estate tax, a defect in the title resulted which made it unmarketable within the meaning of the terms of the offer to purchase. If there was any reasonable doubt relative to litigation regarding the title, then the property was not "marketable." (*Culligan* v. *Leider*, 65 Cal.App.2d 51, 58 [149 P.2d 894].) In *Heymann* v. *Viane*, 252 N.Y. 159 [169 N.E. 124], it was held that as long as a tax remained unfixed and unpaid, the realty was not marketable.

It is also apparent that the defendants by their letter of October 11, 1947, to the First National Bank of Vista terminated the escrow in accordance with the express provision of the escrow instructions providing for a written demand for the return of money and/or instruments deposited by them in the event that the conditions had not been complied with on the closing date of October 10, 1947.

Since we have determined that the court erred in decreeing specific performance under the conditions shown herein, it is not necessary for us to decide the other questions raised by the parties on these appeals.

The judgments are reversed. Defendants to recover their costs.

Griffin, Acting P. J., concurred.

Plaintiffs and appellants' petition for a hearing by the Supreme Court was denied March 23, 1950.