[Civ. No. 5346. Fourth Dist. Dec. 18, 1956.]

JOE R. SPANGLER, Appellant, v. DANIEL S. CASTELLO et al., Respondents.

Stutsman, Hackett & Nagel for Appellant.

Lopez & Hyde for Respondents.

GRIFFIN, J.—Plaintiff, cross-defendant and appellant Joe R. Spangler (hereinafter referred to as plaintiff) brought this action against defendants, cross-complainants and respondents Daniel S. Castello and wife (hereinafter referred to as defendants) for specific performance of an escrow agreement to sell certain acreage near Fresno for subdivision purposes. The escrow agreement, dated May 6, 1954, and signed by the parties, provided generally that plaintiff would buy it for $64,600, subsequently changed to $68,000, would pay $20,000 into escrow and execute a trust deed and note to defendants for the remaining $48,000. It also provided that the cross-defendant Home Title Company "may release any lot in the proposed subidivision" under certain conditions. It then specifically provided, in the offer, that the "escrow is contingent upon F.H.A. and V.A. approval" and "if you are unable to comply with these instructions within 7 months from this date said money and instrument shall thereafter be returned to me on demand. In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest possible date thereafter, unless I shall have made written demand upon you for the return of all instruments or money deposited by me." On November 12, 1954, it was amended to change the sale price to $68,000.

It appears that in connection with the financing of the $20,000 payment above mentioned, plaintiff, on October 25, 1954, entered into a separate escrow agreement in another title company with Mr. and Mrs. Woo (a copy of which is in evidence) whereby they would loan plaintiff this sum, on this same property, when title passed to plaintiff, and he was to execute a *first* trust deed and note on the property to them as security. A grant deed executed by defendants on November 19, 1954, was placed in escrow and was accompanied by a letter authorizing its delivery upon certain conditions, including the delivery to defendants by plaintiff of a *first* trust deed and note in the sum of $48,000 on the property here involved. On November 19, 1954, plaintiff placed in said escrow such a note and first trust deed. The $20,000 was never placed in escrow and no F.H.A. or V.A. approval was obtained. On December 7, 1954, more than seven months after the execution of the escrow agreement, defendants filed with the Home Title Company a notice of rescission, cancellation of escrow, and a demand for return of documents, stating that the escrow instructions had not been complied with and that

the time agreed upon had elapsed without the closing of the escrow.

Plaintiff brought this action for specific performance and claimed that he had been doing considerable work in preparation for the subdivision; that the provision in the escrow agreement in reference to the F.H.A. and V.A. approval was placed in there at his request; that he had waived that provision, placed there solely for his benefit, that he was entitled to waive it; and accordingly was not in default in this respect.

Plaintiff produced the testimony of the escrow agent who said on November 6, 1954, plaintiff insisted on closing the escrow and he informed him it could not be closed without a waiver of that provision; that plaintiff orally agreed to such a waiver but he was informed it would be necessary to have the waiver of defendants; that he called Mr. Castello and told him about it and he said he had given Spangler long enough to comply and he was not inclined to agree to waiving that part of the agreement. He then testified he called the other title company and they indicated the $20,000 "was available" but he did not know the arrangements in reference to that escrow.

Plaintiff testified to a similar conversation with Mr. Castello in which plaintiff said he waived that provision and wished Castello to do the same but Castello refused and wanted an entirely new deal. He then testified he made certain soil tests of the property in conjunction with the F.H.A., and it required the fencing of the property from the irrigation ditch. Apparently no approval was secured from the F.H.A.

Mr. Castello testified this provision was placed in the escrow by mutual agreement; that plaintiff asked that it be placed there; that plaintiff explained its purpose was to enable them to obtain proper financing and "we would have to have F.H.A. approval," and that plaintiff agreed to obtain it; that on December 7, plaintiff called and asked for a "waiver" of 20 days, which he rejected because he had already taken seven months; that he then had his attorney serve the notice indicated. At the hearing it was agreed that if Mrs. Woo were present she would testify, subject to objection, that on December 6, 1954, she would have taken a second trust deed and turned over the $20,000 to plaintiff. The records of this title company show that she deposited $20,000 under that escrow which provided for a *first* trust deed on this property as security.

That escrow agent testified he was not authorized to accept any incumbrance other than the one specified in the escrow agreement (such as a second trust deed) and that the $20,000 was never deposited in escrow with the Home Title Company but if the escrow provisions had been carried out and it was ready to close, the custom was for each title company to record the proper documents and pay over the money at the time.

Defendants produced an expert real estate appraiser who testified that the approval of the F.H.A. and V.A. played an important part in fixing the value of subdivision property and particularly in financing it and, if not obtained, conventional financing is necessary and if that is not obtained, the subdivision project itself may prove to be a failure for many reasons. He indicated that this feature would be of particular interest to one holding a first trust deed on the property.

The trial court found generally in favor of defendants and specifically found that the sale price was the fair market value of the property at the time; that plaintiff did not obtain an F.H.A. or V.A. approval, as required by the agreement; that this provision was not inserted in the escrow agreement solely at the request of and to protect plaintiff's interest therein but defendants were concerned with its inclusion; that it is true that on December 6, 1954, plaintiff orally agreed to waive that provision but defendants refused to consent to do so; that said provision was in fact a condition for the benefit of both plaintiff and defendants and that the failure to close the escrow was due to plaintiff and not to defendants; that at the expiration of the seven months the obligations of plaintiff had not been complied with in this respect and he had not deposited in said escrow the $20,000 required and therefore defendants were entitled to terminate the agreement; that the escrow agreement is incapable of being specifically enforced by plaintiff and accordingly defendants' title to said property is quieted under their cross-complaint.

It is now claimed by plaintiff on this appeal that since defendants did not indicate the particulars in which plaintiff was claimed to be in default or upon what basis plaintiff refused to complete the escrow, the necessity of plaintiff to actually tender the F.H.A. and V.A. approval or tendering or placing the $20,000 in escrow was waived, citing *Fogler* v. *Purkiser*, 127 Cal.App. 554 [16 P.2d 305]. These claims are not supported by the evidence. That sum, admittedly, was not placed in the escrow. Under the agreement, at the

end of seven months, upon failure to comply with its provisions, without notice and upon demand, defendants were entitled to the return of the instruments. (*Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 251 [270 P.2d 563].) Plaintiff's offer of performance was conditioned upon defendants' waiving F.H.A. and V.A. approval. Plaintiff was in default in reference to the placing of the $20,000 in escrow within the time required. It is apparent, under the terms of the two escrow agreements, each trust deed was to a *first* trust deed upon this same property. The impossibility of this needs no explanation. The testimony of Mrs. Woo that she later may have consented to loan that sum on a second trust deed bore only on the question of plaintiff's ability to perform the terms of his agreement and deposit that sum in escrow.

Ability without performance does not amount to compliance (*Watts* v. *Mohr,* 86 Cal.App.2d 256 [194 P.2d 758].) The court was authorized to reject this claim. There can be no effective offer of partial performance. (Civ. Code, § 1486.) Before an offer to do an act in fulfillment of an agreement can bind the offeree it must conform to the terms of the very agreement or its new conditions must be accepted by the other party. (*Bullock* v. *McKeon,* 104 Cal.App. 72 [285 P. 392].) Throughout the seven months' period defendants insisted on strict performance. It was fully performed by them and plaintiff was not excused from performing within that time. Accordingly, *Fogler* v. *Purkiser, supra,* and the sections of the Civil Code upon which plaintiff relies are inapplicable. The trial court was justified in finding that plaintiff was not entitled to specific performance. (*Ward* v. *Downey,* 95 Cal.App.2d 680 [213 P.2d 523]; *Lind* v. *Baker,* 48 Cal.App.2d 234 [119 P.2d 806].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.