[No. 14309.  In Bank. — October 6, 1892.]

FRANK A. MILLER, ADMINISTRATOR, ETC., ET AL., APPELLANTS, *v.* J. D. H. COX, RESPONDENT.

CONTRACTS — TIME OF ESSENCE — OBJECT OF CODE PROVISION. — The object of section 1492 of the Civil Code is to obviate the difficulties which have arisen in determining whether time is of the essence of a contract, or not, so far as subsequent contracts are concerned.

ID. — EXPRESS DECLARATION IN CONTRACT — CONSTRUCTION OF CODE. — Although it is not necessary, in order to make time of the essence of a contract, that it should be expressly declared therein to be of the essence of the contract in the exact words of section 1492 of the Civil Code, yet the intent to make it of the essence must be clearly, unequivocally, and unmistakably shown by an express declaration, and it is not enough that a time be specified during which, or before which, an act must be done.

ID. — VENDOR AND PURCHASER — FORFEITURE — TENDER AFTER DATE FIXED FOR PAYMENT — UNASCERTAINED PURCHASE-MONEY — DUTY OF VENDOR TO ACCOUNT. — Where a contract for an interest in lands is such that the purchasers could not know how much they were to pay until after they had an accounting with the vendor, although it fixes a date for settlement and payment of all sums due and to become due under the contract, under penalty of a forfeiture of the right to a conveyance, it does not make time of the essence of the contract, if not expressly so declared; and it is the duty of the vendor, if he wishes to put the purchasers under fault, to inform them of the items of account claimed by him as the basis of settlement and payment, and if he fails to do so, there is no forfeiture of the right to a conveyance; and a tender, after the date so fixed, of an amount greater than the vendor is entitled to receive under the contract is not made while the purchasers are in default.

ID. — DEPOSIT OF TENDER IN COURT. — In such case it is not necessary for the purchasers to deposit the money in court, to make their tender good.

ID. — EXCUSABLE DELAY IN TENDERING PURCHASE-MONEY. — Where the failure of the purchasers to tender the purchase-money at the time fixed by the contract is the result of oversight, and not of intentional neglect, and it is not pretended that there was any trifling with the vendor or with the contract, or that the purchasers intended to vex the vendor in any manner, and the situation of the parties and subject-matter of the contract has not changed so that injury will result, the delay of the tender is excusable.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Elmer E. Rowell, William A. Purrington,* and *R. E. Houghton,* for Appellants.

*E. B. Stanton,* for Respondent.

PATERSON, J. — In 1884, Mr. Matthew Gage was engaged in the construction of a canal which was to take water from a station in San Bernardino County, and to conduct the same to lands below the point of diversion for irrigation. For this purpose he employed Mr. C. C. Miller, a civil engineer, and intrusted to him the sole management of the matter, with full power to locate the line and construct the ditch. The defendant, Cox, knowing that Miller was clothed with the authority to determine where the ditch should be run, visited Miller, and asked him "to give him some points on what land was going to come under the Gage canal." It appears that Miller and his son-in-law, plaintiff Richardson, had previously agreed upon the line on which the ditch was to be constructed, and had taken steps to secure a portion of the lands to be benefited by the water which it would carry. The result of the interview is shown by the testimony of Richardson, which is substantially as follows, and is uncontradicted: "Shortly after, Miller came in, and we three talked it over and agreed to let Mr. Cox in on the purchase of the land, . . . . with the understanding that he was to put up all the money, pay the taxes, the twenty per cent, and the insurance, etc. After the final payment, we were each to come in and have one third of the land and pay one third of the cost. . . . . He approached us on the subject. We did not ask him to come into the deal. He saw us two or three times. My father-in-law took him over the land and showed him where it was. . . . . After talking to us, he went and

made application to the railroad company for the land, and entered into the agreement with the railroad company. After that he entered into this contract with us. At the time of the agreement, there was no water available for the land,—no water anywhere near it. It was not fit for agricultural land. . . . . The land, I should think, was worth no more than about eight or ten dollars an acre." The witness further testified that the canal had been completed, and it had made a difference in the value of the land of about ninety dollars per acre. On cross-examination, he testified that he demanded of Mr. Cox, on November 22d, an account of the money that was due him under the contract, and on November 26th tendered him twelve hundred dollars in gold coin, which tender was refused. Witness also testified, and his statement is not controverted, that there were two contracts drawn up. " The first contract was to the effect that after Mr. Cox had advanced all the money and made all the payments, we were all to come in and pay one third of the purchase price of the land and have one third of the lands each. After he had paid twenty per cent of the purchase-money, he was dissatisfied with that. They were slow with the canal, and he was fearful that they would not get there. And we agreed to make another agreement with him, as he wished to." The second agreement referred to in this testimony is the agreement upon which the plaintiffs rely in this case. By its terms it is provided that Miller and Richardson should each pay Cox " one undivided one third of all money expended by him (Cox) for the purchase of said land, whether principal or interest, and of all taxes and expenses, and ten per cent per annum interest thereon from the date of such payments. In the event of a failure on the part of the parties of the second part to pay each his one third of all sums advanced by the party of the first part (Cox) then due on the first day of November, 1889, together with one third each of the balance due and to become due on the contract above mentioned of party of the first part with the Southern

Pacific Railroad Company, the said party of the first part shall be released from all obligations in law or equity to convey said property, and said parties of the second part, or either of them, shall forfeit all right thereto."

The complaint alleges the execution of the agreement, the condition of the property prior to and at the time of the execution of the agreement, the circumstances under which the latter was made, the construction of the canal, and the effect of its operation upon the value of the land, the tender made on November 26th, and demand for a deed; and as an excuse for their failure to make the tender and demand earlier, the plaintiffs allege mistake, oversight, and pressure of business affairs; that defendant never demanded any money from them, or notified them as to the amount of money he claimed to be due him under the contract; that the lands had not increased in value since the first day of November; and that defendant has sustained no loss on account of plaintiffs' delay in tendering the money. They therefore pray for a judgment requiring the defendant to convey to them two thirds undivided interest in the property. The answer admits the execution and delivery of the agreement, but denies nearly every other material allegation of the complaint.

The court found that the allegations of the complaint with respect to the condition of the land, the knowledge of the plaintiffs, and the circumstances under which the defendant procured them to enter into the contract were true, and " that it was in consideration of the information so furnished as aforesaid, as to the course and location of the said canals, . . . . that the defendant entered into and made and executed with the plaintiff the agreement "; that the land had increased in value from eight to one hundred dollars per acre by reason of the construction and operation of the canal; that the defendant took and has ever since retained possession of the lands; that the plaintiffs made a tender, as alleged, on November 26th, but did not tender the amount of any taxes or inter-

est thereon, for the reason that they did not know the amount of the same, but that the plaintiffs offered to pay the defendant any sum which was due to him, and demanded that he should convey to them the interest which he had agreed to sell and convey; that the defendant refused to convey, as requested; that the land was of no greater value on the twenty-sixth day of November than it was on the first day of November, 1889; that the failure of the plaintiffs to make a tender of performance prior to November 26th was the result of oversight and neglect, and was not intentional on the part of either of them; that defendant never demanded any money from either of the plaintiffs, and never notified either of them as to the amount of money due him under the contract. As conclusions of law, the court found that time was of the essence of the agreement; . . . . that plaintiffs did not offer performance of the terms of their agreement . . . . at the time fixed . . . . for such performance, and by such default they have forfeited all right to a conveyance under the said agreement; . . . . that an offer of performance on the part of plaintiffs on the first day of November, 1889, was a condition precedent on their part; . . . . that plaintiffs have failed to account in a reasonable manner for their delay in tendering performance."

Judgment was entered in favor of the defendant, and from this judgment, and an order denying their motion for a new trial, the plaintiffs have appealed.

It is claimed by the appellants that, under section 1492 of the Civil Code, time cannot be said to be of the essence of the contract, unless it is expressly declared in the contract that "time is of the essence of the obligation." The section referred to provides that "where delay in performance is capable of exact and entire compensation, and time has not been expressly declared to be of the essence of the obligation, an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due," etc.

Prior to the adoption of this provision of the Civil Code, our own authorities had left in great doubt the

question as to what language was necessary to make time of the essence of a contract. In *Steele* v. *Branch*, 40 Cal. 9, the court said: "In construing contracts, it is often one of the most perplexing questions with which courts of equity have to deal, whether the time within which an act is to be performed is of the essence of the agreement. In the very nature of the case, it is impossible to prescribe any general and uniform rule on the subject, and each case must necessarily be decided upon its own circumstances." In that case it was held the provision in the contract, to the effect that if the plaintiffs should fail to comply with the conditions, the land and improvements should revert to the defendant, was inserted merely to induce a prompt performance. In *Grey* v. *Tubbs*, 43 Cal. 364, decided about a year prior to the adoption of the codes, it was held that a provision similar to that under consideration in *Steele* v. *Branch*, 40 Cal. 9, made time of the essence of the contract, the court saying: " It would be difficult to express with greater clearness and certainty than the parties did in this contract that time is of the essence of the contract, *except it were done by the insertion of those very words in the instrument.*" In view of the unsettled condition of the law upon this subject at the time of the adoption of section 1492 of the Civil Code, and of the fact that " in construing contracts it is often one of the most perplexing questions with which courts of equity have to deal, whether the time within which an act to be performed is of the essence of the agreement," it is clear that the legislature intended to obviate all difficulty in that regard, so far as subsequent contracts were concerned. The commissioners make this intention plain in their note to the section, where it is said: "This clause obviates the difficulties which constantly arise in determining whether time is of the essence of a contract, or not. The provision that 'an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due,' is also new."

We do not think it is necessary, in order to make

time of the essence of the obligation, that it should be declared to be so in the words of the statute; but the intent to make it of the essence of the contract must be clearly, unequivocally, and unmistakably shown by an express declaration. Waterman on Specific Performance says that "the parties themselves may stipulate that time shall be of the essence of the contract. This has been done in almost all of the modern cases in which time has been strictly regarded." (Sec. 461.) Mr. Pomeroy, in his work on Specific Performance, says that "the prescribing a day at or before which, or a period within which, an act must be done, even with a stipulation that it shall be done at or before the day named, or within the period mentioned, does not render the time essential with respect to such an act. (Sec. 392. See also sec. 374.) In order to render time thus essential, it must be clearly and expressly stipulated that it shall be so; it is not enough that a time is mentioned during which or before which something shall be done." (Fry on Specific Performance, sec. 712; *Jones* v. *Robbins,* 29 Me. 351; 50 Am. Dec. 593; *Barnard* v. *Lee,* 97 Mass. 95.)

It cannot be said that the language in the contract before us " clearly, unequivocally, and unmistakably " shows an intent to make time of the essence of the contract. It certainly does not *expressly declare* such to be the intention of the parties. The parties of the second part could not know how much they were to pay until after they had an accounting with the party of the first part. The contract informed them only of the amount they were to pay on account of the purchase price paid to the railroad company. They could not know until after an accounting with the defendant what expense he had incurred in making the purchase, or how much he had paid on account of taxes, and could not know how much interest they were required to pay, without being informed as to the dates of the payments. The parties of the second part were to pay each " his one third of all sums advanced by the party of the first part then due on the first day of November, 1889, together with

one third each *of the balance due and to become due on the contract above mentioned of party of the first part with the Southern Pacific Railroad Company.*" This provision is somewhat ambiguous.   As a matter of fact, the last payment was not due from Cox to the railroad company until November 4th, but it was actually paid on October 16th.   The parties of the second part were to pay interest on all the payments.   They were also to pay one third of the expenses which Cox had incurred in securing the title, one third of the taxes, and one third of the amount *to become due on the contract.*   How could they know what amount they ought to tender Cox? That was a matter within the knowledge of the defendant alone, and it was his duty, we think, to inform them as to the amount he had expended. (*Peasley* v. *Hart,* 65 Cal. 522.)   Of course, the parties of the second part could have inquired of the defendant the amount due on November 1st, and could on that day have tendered the amount named by him; but were they bound to accept as correct the amount claimed by him, and pay the same, or "forfeit all right" to a conveyance?   A proper construction of the contract, when all of its provisions are read and considered together, we think simply fixes November 1st as the time of settlement, and gives to the parties of the second part a reasonable time in which to ascertain the amount due.   A fair consideration of all the provisions of the contract, and the circumstances under which it was made, precludes the idea that the plaintiffs had to make payment on the 1st of November, or "forfeit all right" to the property.   If Cox desired to put the plaintiffs in default for non-payment according to the terms of the contract, he ought to have given them a statement of the payments he had made and the dates thereof.   On November 26th, plaintiffs tendered to Cox the sum of twelve hundred dollars, which was more than the latter was entitled to receive from them under the contract.

Our conclusion is, that time is not of the essence of the contract, and that the plaintiffs were not in de-

fault at the time they tendered the twelve hundred dollars to the defendant.

It may be admitted that there is an apparent conflict of authority upon this subject. In most of the cases cited by respondent, however, time was either declared to be of the essence of the contract, or language was used amounting to an express declaration of such intention. In some of the cases cited, there was no part performance by the vendee, and the considerations were mere cash payments. In the case at bar the court expressly finds that it was in consideration of the information which the plaintiffs furnished to the defendant as to the course and location of the canal, and the lands over which it would be constructed, that the defendant entered into the contract. Without this information obtained from the plaintiffs, the defendant could not have known what lands to purchase; and now, after plaintiffs, relying upon defendant's promise to convey, have lost their right to purchase the lands at eight dollars per acre, it would seem to be unconscionable to allow the defendant to defeat the plaintiffs in this action because, through mistake and inadvertence, they allowed twenty-six days to elapse before making a tender of the amount they were required to pay him. Even if time were declared to be of the essence of the contract, it is doubtful whether, under the circumstances shown in this case, a court of equity would refuse to enforce specific performance of the contract. (Waterman on Specific Performance, sec. 461.)

It is claimed that no sufficient excuse is given for the delay. In determining the question whether delay is excusable, no general or uniform rule on the subject can be prescribed; each case must necessarily be decided upon its own circumstances. In *Hubbell* v. *Von Schoening*, 49 N. Y. 331, the court said: "If the situation of the parties or property is not changed so that injury will result, and the party is reasonably vigilant, the court would relieve him from the consequences of the delay. . . . A party may not trifle with his contracts and still ask the

aid of the court of equity. Neither will the law be administered in a spirit of technicality, and so as to defeat the ends of justice. In this instance, there is no vexation, no room for suspicion of any trick on the part of the plaintiffs; at most, it was a mistake in depending upon the promise of the defendants' attorney to advise him when the defendants arrived, if they should arrive on the day fixed for the performance of the contract." In the case at bar the court has found that the failure of the plaintiffs to tender performance was the result of oversight, and not intentional neglect. It is not pretended that they were trifling with the defendant or his contract, or that they intended to vex him in any manner; and the evidence is uncontradicted that the property was worth no more on the day tender was made than it was on the first day of November. We think, therefore, that the delay was excusable. (*Butler* v. *Archer*, 76 Iowa, 551.)

It was not necessary, under the circumstances, for the plaintiffs to deposit the money in court, to make their tender good. (*Loughborough* v. *McNevin*, 74 Cal. 256; 5 Am. St. Rep. 435.)

The judgment must be reversed, but there is no necessity for a new trial. The amount that is due from each of the plaintiffs is undisputed. Mr. Cox himself stated that it was $552.10.

The judgment is reversed, and the cause is remanded, with directions to the court below to set aside its conclusions of law, and substitute therefor other conclusions in accordance with the views herein expressed, and to enter a decree in favor of the plaintiffs in accordance with the prayer of their complaint.

McFARLAND, J., DE HAVEN, J., GAROUTTE, J., and SHARPSTEIN, J., concurred.

Rehearing denied.