[Civ. No. 17103.   Second Dist., Div. One.   Oct. 31, 1949.]

WILLIAM J. JOLIN et al., Appellants, v. JOHN SPIRA et al., Respondents.

357

Henry C. Rohr for Appellants.

Loris V. Cady and Jacob W. Silverman for Respondents.

DRAPEAU, J.—On January 17, 1946, plaintiffs as buyers, the individual defendants as sellers and the corporate defendant as escrow agent, negotiated the sale of real estate by means of escrow instructions, one of the conditions made therein by the buyers being: "Hold for me termite clearance showing the property free and clear of infestation."

During the pendency of the escrow, the escrow agent submitted to plaintiff Wm. J. Jolin a document dated February 18, 1945, denominated "Termite Clearance," executed by Atlas Termite Service, addressed to Howard G. Golay Realty Company, the broker handling the instant transaction, which recited as follows:

"This is to certify that we have treated the above property for the eradication of dry wood and subterranean termites. This control service is for a period of two years with a semi-annual inspection."

While this document specifies property at a different address, it was established by testimony given in behalf of said termite company that the clearance covered the property which is the subject of this litigation.

This certificate was handed to plaintiff Wm. J. Jolin by an officer of the escrow company, who testified: "I told him this was the report that was on the property and it was a year old at the time it was handed to him, and that it was a two-year guarantee and for him to approve it—or examine it and approve it. . . . It was in the old escrow file wherein Mr. Spira and Mr. Grimm had purchased the property." In explanation, this witness testified that in checking the file and getting ready to close the escrow, she found that no termite clearance had been filed; that Mr. Golay, the broker, told her to take the clearance filed in escrow at the time of the sale of the property to Messrs. Spira and Grimm the year before. When asked why she cleared this document in connection with the instant transaction, this witness replied: "Because it was approved by the buyer as satisfactory."

Defendant Othmar Grimm testified that "I told Mr. Golay we should give any inspection Mr. Jolin wants, and Mr. Golay said, 'The termite inspection is not necessary because the certificate on hand is satisfactory to Mr. Jolin. He doesn't want a termite inspection, a new one, because the certificate and services are paid in advance for two years. Therefore, he wants to have this certificate transferred.' "

With respect to the document here under review, Mr. Jolin testified that Miss Vybiral, the escrow clerk, "showed me the certificate and I read it and I asked her to see if that certificate was all right and she said yes."; that he did not call for any further certificate "Because I depended on the Wilshire Escrow Department. I thought they were supposed to take care of that thing. I was paying them to take care of it, to clear the property for me"; that he read the document but did not see that it was dated the year before, or that it ran for two years with sem-annual inspection; that he read the body of this and handed it to Miss Vybiral and asked her to see if this was a good clearance, and she said it was all right. In answer to the question by Mr. Silverman, "Did you ever avail yourself of the six-month inspection that it set out in that instrument?" this witness stated: "That was impossible, because when you called the Atlas Company there was never anybody there. They wouldn't come if you called them."

The escrow was closed and title passed to the buyers in February, 1946. In November of that year, evidence of infestation by termites became apparent and Mr. Jolin attempted to reach the Atlas Termite Company without success;

he did nothing further about the termites, because "I was not prepared to do anything at the time and I just let it go for the time being to see what would develop"; that he did not notify or get in touch with the sellers or the escrow company at that time, although he talked to Mr. Golay, the real estate broker.

In February of 1947, termites were again observed in the buildings and plaintiffs again unsuccessfully tried to reach the Atlas Company. They then called upon the Terminex Company to make an inspection and report which showed the premises were heavily infested with fungus, dry wood and subterranean termites and that such condition had existed over a period of from four to 10 years. Plaintiffs hired Terminex Company to eradicate the infestation and repair the buildings at a cost of $4,402. Later it was necessary to paint part of the buildings at an additional cost of $500.

The court found among other things that the property was infested with termites at the time it was conveyed to plaintiffs; that it is not true that the sellers knew or had reason to know that the premises were infested; that at the time of closing of escrow and at all times, excepting November, 1946, plaintiffs failed to make any investigation of the premises to determine whether there was any termite infestation; that because of plaintiffs' failure to notify defendants that there was infestation defendants' rights have been impaired and prejudiced; that plaintiffs read the document designated termite clearance, failed to object to it or to ask for a better document or certificate, and fully accepted the same; that plaintiffs expended the sum of $4,902.60 "for extermination of later discovered infestation and for structural repairs incident thereto"; that plaintiffs have not been damaged by reason of any failure or breaches by any of the defendants.

Based thereon, the court concluded that plaintiffs by their acts had waived any right to recovery from defendants; were estopped from making any claims against defendants, and therefore were not entitled to recover.

From the judgment which followed in favor of defendants, plaintiffs have appealed.

The basic question presented on this appeal is whether the evidence is sufficient to sustain the trial court's finding that appellants waived their right to a strict compliance with the terms of the escrow agreement by their acceptance and approval of the document here under review.

As above pointed out, there is a direct conflict in the evi-

dence regarding the circumstances under which appellants approved the document:

They claim they accepted it upon the advice of the escrow agent.

The escrow agent denies that any advice was given; that when she handed the so-called termite clearance to Mr. Jolin she told him that "it was a year old but there was a two-year guarantee on it, and for him to check it and, if it was satisfactory, to approve it and tell me it was approved, which he did." This witness also testified that when she handed him the report, she also handed him for his approval the bill of sale, inventory and insurance policies as provided in the escrow, and that Mr. Jolin approved these papers also; that he was anxious to get the escrow closed, as he said he was going East; told her that everything was satisfactory and to go ahead and close the escrow.

It is elementary that the weight of the evidence and the credibility of witnesses are questions for the trial court, and its determination thereof is binding on an appellate court.

■ Nonperformance of conditions set up in escrow instructions "may be waived by the party who is entitled to demand performance. Failure to perform within the specified period may be waived; and indeed a party may waive any condition . . ." (5 Cal.Jur. 10-Yr.Supp. (1944 Rev.), Escrows, § 14, pp. 576, 577; and see, also, 19 Am.Jur. § 20, p. 438; and 130 Am.St.Rep. 951.)

■ A waiver is defined in *Bastanchury* v. *Times-Mirror Co.*, 68 Cal.App.2d 217, 240 [156 P.2d 488], as "the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances indicating an intent to waive. (*Davis* v. *Brinkhouse Hotel Co.*, 74 Colo. 199 [219 P. 1074]; *Johnson* v. *deWaard*, 113 Cal.App. 417 [298 P. 92].)

"The rule is clearly stated in *Michaels* v. *Pacific Soft Water Laundry*, 104 Cal.App. 349 [286 P. 165, 1071] that one may waive a right given by contract or advantage of law intended for his benefit. (See, also, Civ. Code, § 3513.)"

■ Whether there has been a waiver is ordinarily a question of fact. (*Lyons* v. *Brunswick-Balke, etc. Co.*, 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173], citing 25 Cal.Jur. 932.)

■ The circumstances disclosed by the record herein are amply sufficient to raise the inference that appellants waived

their right to a strict compliance with the escrow instructions when they accepted the document here in question.

The judgment is affirmed.

White, P. J., concurred.

Doran, J., dissented.

Appellants' petition for a hearing by the Supreme Court was denied December 29, 1949.