[Civ. No. 4642.   Fourth Dist.   Apr. 2, 1954.]

WINIFRED MAUDE BLACK et al., Respondents, v. ARNOLD BEST COMPANY (a Corporation), Appellant.

Ralph Robinson for Appellant.

Milo Rowell, Jr., Richard Z. Lamberson, Breckinridge Thomas and Rowell, Lamberson & Thomas for Respondents.

GRIFFIN, J.—By separate leases dated July 17, 1947, plaintiffs, doing business as "Black's" food stores, leased to defendant, for a fur business, the third floor of their building for a 20-year period at $200 per month, payments to begin September 1, 1947, and a space 17 feet by 9 feet by 6 feet on the mezzanine floor of that same building, together with window display space for the same period at $50 per month.

Defendant took possession of the leased premises, with the possible exception of the mezzanine floor, and moved in considerable stock in trade. Thereafter, defendant paid the monthly rentals intermittently. On several occasions the checks given in payment of rent did not clear the bank for a period of several weeks. The rental for one four-month period (February, March, April and May, 1950) amounting to $1,000, was not paid until December 4, 1950, by a personal note of a Mr. Weinblatt, one of the parties interested. It was at this time that plaintiffs informed defendant that its tenancy was unsatisfactory because of lack of proper payment of rent on time and because defendant was planning to "crack up the floor" and put in a staircase, which was objectionable to plaintiffs. The manager of plaintiff company told Mr. Weinblatt that they had not operated their store in good faith; that they had not conducted any amount of business in the place for two years and that he was not going to allow any further breach of the terms of the lease; and that if there was such a breach in the future they would terminate the lease. He testified that he asked Weinblatt what he wanted the lease for anyhow, since he apparently had little use for the property, and Weinblatt then asked him "how much is it worth for us to get out," and he told him it was worth nothing to him. The next month's rent of $250 was due on January 1, 1951, and was not paid until January 9, 1951. This was the last payment of rent entered in plaintiffs' books. These payments were not entered in the books until the checks were actually paid by the bank on which they were drawn. On February 1, 1951, the monthly rental was due and was unpaid. On March 1, a like sum became due and remained unpaid. Soon thereafter plaintiffs consulted their attorney about dispossessing defendant, and on March

14, "Notice to Correct Breach and Notice to Pay Rent or Quit" was posted in two places on the leased premises. The notice, dated March 14, 1951, reads in part:

"A breach of said lease has occurred in that you have failed to pay the rent due. . . . You are accordingly notified to correct such breach within a period of 5 days from the date hereof or to quit and deliver up possession of the premises."

Copies of this notice were, by registered mail, sent to defendant company at the address of the leasehold premises. A further written notice was mailed on March 19, 1951, in a similar fashion, notifying defendant of the amount due and unpaid, and that "in the event payment thereof is not made within the period of 3 days after the service of this notice upon you that said lessors elect to terminate said lease and said lease will stand terminated."

Thereafter, a Mrs. Gammage, secretary-treasurer of the defendant company, came to plaintiffs' office on Friday, March 23, and said she came to pay the rent that was in arrears. The manager of plaintiffs' store testified he asked her if she had the cash and she said "no" but that she had a check; that he told her he was sorry, they had too much trouble with her checks "bouncing" on previous occasions, and he did not wish to accept it; that she said she did not blame him and he then told her to see plaintiffs' attorney if there was to be any further conversation about the matter; and that she left. He further testified that about March 26, 1951, afer the time set out in the notice of termination had expired, he entered the premises on the third floor by means of a key given to him by defendant's agent on March 23, and had the stock in trade removed to a bonded warehouse and plaintiffs paid the bill, including storage expenses, amounting to $993.16.

It appears that after Mrs. Gammage left plaintiffs' office on March 23, she went to plaintiffs' attorney's office and told him she had been sent there to talk about the settlement of the $500 rent owed by the Arnold Best Company; that she offered her check and it was refused; that they told her they would take $500 in cash but not take a check from her, due to past performances in this regard; that the attorney told her the leases were terminated but if defendant would pay $500 for past rent plaintiffs would lease the third floor to them for the balance of the month so they could make arrangements to remove the goods; that by telephone plaintiffs' attorney talked to Weinblatt in Los Angeles and told

him the same thing; that Weinblatt stated he refused to accept the termination and the attorney informed him that Weinblatt was not the one to determine that question since he was in default in payment of the rent. Mrs. Gammage made an appointment to see plaintiffs' attorney the following day for further discussion, after she had talked with a Mr. Benioff, chairman of the board of directors of the defendant company in New York, by telephone. The next morning she telephoned to the attorney and stated she had been unable to reach Mr. Benioff. The attorney told her his client was not going to go beyond that weekend to settle the matter, and that if it was not settled they were going to start moving the property out of the premises on Monday. The attorney testified he heard nothing further from her.

It appears from Mrs. Gammage's testimony, which is at variance with the testimony of the other witnesses, that without the knowledge of plaintiffs or their attorneys, she did, on Saturday morning, go to a bank and deposit $500 in cash in a special account entitled ''Black's Grocery'' for their benefit. She testified she received this cash by telegram from New York that day and then contacted defendant's lawyers and related what she had done and that she left Fresno on Sunday to return to San Francisco where defendant company had one of its offices. On Monday, March 26, these attorneys wrote plaintiffs' attorneys that they had been informed by Mrs. Gammage that she had tendered $500 to them as part of the rent and that it had been refused. Therein he notified plaintiffs that on March 24th $500 had been deposited to their account in a certain bank. Attorneys for plaintiffs replied to this letter on March 27th and informed defendant's attorneys that the information obtained from Mrs. Gammage was in error; that she offered to write a check in payment of the rent and they refused the suggestion; that when she was dealing with them that morning she said nothing about making a deposit in the bank for the account of Black's but on the contrary asked for time; that he had conferred with Benioff and informed him that the leases had been legally terminated, and since Mrs. Gammage failed to notify them of any other arrangements they were proceeding to remove the defendant's property from the premises; and that they considered defendant liable to plaintiffs under the lease for such expenses as well as attorneys' fees incurred.

This action followed. The plaintiffs, in the first cause of action, seek to quiet plaintiffs' title to its possession and

ownership of the property free and clear of any leasehold rights of the defendant. In a second cause of action they seek judgment for rent past due and attorneys' fees; and in a third count they seek recovery for money advanced in removing defendant's property and for storage expenses totaling $902.54, and for attorneys' fees involved in the action.

The answer of defendant denies generally the allegations of the complaint and alleges that the two leases are still in force and effect. It denies that defendant was in default under the leases; admits the leases provide for attorneys' fees upon the happening of certain events, but claims such events have not legally occurred. It then alleges, somewhat in detail, the fact that defendant spent considerable sums in installing fixtures and semipermanent improvements in the place; that the attempted termination of defendant's rights under the leases by reason of default in payment was a result of a misunderstanding, and that defendant's offer to comply with the terms of the leases was in good faith. It claims certain sums were due defendant by reason of plaintiffs' assuming possession of certain portions of such premises for their own use, and offered to pay any damage suffered by plaintiffs by any claimed breach of the lease. By way of counterclaim it alleged that plaintiffs were guilty of forcible entry and detainer in removing defendant's furniture and in detaining possession of the premises from it, and seeks judgment for $3,000 for each month they were denied such possession. Damages are also sought for loss that occurred through improvements made to the property and for storage charges, etc.

The court found generally in favor of plaintiffs in each cause of action; that defendant was in arrears in rental payments; that plaintiffs served a notice to correct the breach within five days after March 14, 1951; that defendant failed and refused to do so within the required period or at all and, pursuant to the terms of the leases, plaintiffs did terminate both leases involved on March 21, 1951; that accordingly, since the leases so provided, attorneys' fees were allowed to enforce the conditions thereof, totaling $700; that since the leases, in case of breach thereof, provided that lessors might enter the premises and remove the personal property of lessee, plaintiffs were authorized by its terms so to do, and accordingly allowed moving and storage expense fixed at $902.54. It allowed $500 for nonpayment of rental, as alleged in the complaint.

It specifically found as untrue the general allegations of defendant's answer and cross-complaint. Judgment was entered accordingly and defendant appealed.

The principal contentions are whether, under the pleadings, the evidence was sufficient to support the finding that defendant was in default in the payment of rent and whether the plaintiffs legally terminated the leases.

The first contention is predicated upon the argument that since this was an action in equity to quiet title and not one in unlawful detainer, defendant had a right, in an equitable proceeding, to be relieved of default and forfeiture, and accordingly equity was not done, citing *Milton E. Giles & Co.* v. *Bank of America,* 47 Cal.App.2d 315 [117 P.2d 943]; Civ. Code, § 3275; *Gonzalez* v. *Hirose,* 33 Cal.2d 213 [200 P.2d 793]; and *Pehau* v. *Stewart,* 112 Cal.App.2d 90 [245 P.2d 692]. We see no merit to this argument since the court heard volumes of unlimited evidence on both the legal and equitable issues involved and signed findings indicating that the defendant was not entitled to equitable relief nor to relief from its apparent default in payment of rent under the terms of the leases. Section 3275 of the Civil Code is as follows:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

The right to relief from default there authorized is not a matter of right under all circumstances, and that section presupposes that the party seeking relief from a forfeiture is in default, and in order to secure relief under its terms it is necessary for him to plead and prove facts that will justify its application. (*Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367]; *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199]; *Henck* v. *Lake Hemet Water Co.,* 9 Cal.2d 136, 143 [69 P.2d 849].) See also *Crowell* v. *City of Riverside,* 26 Cal.App.2d 566 [80 P.2d 120], where it was said, at page 582:

"While, however, as already observed, the complaint in the instant case seeks, in one of its counts, to quiet the respondents' title and is, therefore, as to that count, in some sort a bill in equity, yet it is such only in a limited sense,

since actions to quiet title are authorized by section 738 of the Code of Civil Procedure and governed by its provisions. In an action to quiet title, therefore, where the case involves a purported forfeiture, what the court is in reality asked to do is not to alter the existing status but to declare it. If the forfeiture has occurred, it has already taken place without any action on the court's part. The court's duty is merely to determine the fact . . . The general rule that equity will not enforce a forfeiture does not apply."

Next, it is argued that since defendant was delinquent in payment of rent on numerous occasions and since plaintiffs accepted these delinquent payments by checks in the past, without objection, even though strict performance as to time of payments was made a condition of the lease, plaintiffs waived such provision and defendant was entitled to notice reinstating the requirement for strict performance and allowing a reasonable time for compliance before being considered in default, citing *Eddleman* v. *Deavel*, 107 Cal.App.2d 351 [237 P.2d 38] ; *Retsloff* v. *Smith*, 79 Cal.App. 443 [249 P. 886] ; and *Gonzalez* v. *Hirose, supra.*

An examination of the terms of the leases, in this respect, shows that defendant agreed to pay the installments of rent on the first day of each month, and in the event of failure of lessee to pay "rent as herein provided . . . Lessor may, at his option, five (5) days after written notice to Lessee to cure said breach (if the same be a breach of a condition other than the payment of rent, and in that event, without notice) ;" (1) terminate the lease, reenter the premises and take possession; (2) without terminating it, reenter and take possession; (3) terminate the lease and take possession without liability for any resultant damage; (4) declare the balance of the rent reserved to be due and payable; and (5) reenter and take possession by process of law, with or without notice to lessee. It is then provided that in case plaintiffs bring an action against lessee to enforce any of the terms of the leases lessee agrees to pay reasonable attorneys' fees. Time is agreed to be the essence of the agreements and "any waiver by Lessor of the prompt and punctual performance of any term, condition or covenant hereof shall not be construed to be a waiver of the prompt and punctual performance of the same or any other term, condition or covenant subsequently when due."

It is apparent that defendant was in default in payment of rent due under the leases. ■ Waiver of the time pro-

vision of the leases was a factual question for the trial court under the facts presented. (*Myers* v. *Williams*, 173 Cal. 301 [159 P. 982].)

It appears from the evidence that defendant was previously informed that plaintiffs would not accept any further checks of defendant as payment for rents, for reasons which were obvious. ■ The evidence also discloses that plaintiffs informed defendant when it paid rentals that were overdue that thereafter they intended to enforce a strict performance of the terms of the leases in this respect, and notice was sent to them, whether required or not under the terms of the leases, to quit or pay rent within five days from that date. Similar notices were posted at the entrance to defendant's office in the Black's store building. A similar written notice was mailed on March 19th, notifying them that if the rent was not paid within three days from date, after service, the lessors elected to terminate the lease.

It is clear that when plaintiffs finally received notice of a cash tender on March 26th (under Civ. Code, § 1500), defendant was in default and had failed to appropriately comply with the notices sent to it within the period required.

The evidence further shows that at the time defendant made the deposit in the bank to a special account, defendant's agent had already been informed that under the terms of the leases the lessors had elected to and did terminate the leases. Although defendant did not specifically plead a waiver or estoppel in its answer, as generally required (*Myers* v. *Williams*, 173 Cal. 301 [159 P. 982]; *Leak* v. *Colburn*, 55 Cal. App. 784 [204 P. 249]; *Clifford* v. *Fleshman*, 65 Cal.App. 762 [225 P. 45]; *Taylor* v. *United States Fidelity & Guar. Co.*, 86 Cal.App. 382 [260 P. 898]), the court found that they were in default, and at least impliedly found that there had been no waiver of the time element in respect to the payment of rent involved. This finding is supported by the evidence.

■ The next argument is that the notices upon which plaintiffs based their election to terminate the leases were ineffective because they were not sent to the place most likely to provide the defendant with notice, and accordingly the time within which to comply with the notices was unreasonable.

As heretofore noted, the notices were posted at and addressed to the defendant at the third floor of Black's building in Fresno. Defendant claims that they only spasmodically occupied these quarters during the past two years; that they

had offices in San Francisco and Stockton and were paying an agent of theirs a small amount each week to obtain, every few days, their mail which came to them at Black's store, and to forward it to them; that this agent also rendered some service in sending certain merchandise from the store to them, as it might be ordered.

This agent testified she received a registered letter on March 15, 1951, addressed to Arnold Best Company, at its place of business in Fresno, and signed a return receipt therefor in the name of the company and forwarded it to San Francisco, which was supposed to be the headquarters of Crown Mark or the Arnold Best Company; that she received another registered letter between March 14 and 19, and forwarded it to the company's address in Stockton because she was told to forward further mail there instead of the San Francisco address; and that she saw the notice posted on the door at the place of business in Fresno.

It appears that plaintiffs' usual custom was to bill defendant for the rental. Such bills were sent to the San Francisco office. The last one was so sent on March 1, 1951, and was forwarded to defendant's agent in Stockton. It appears that defendant company was having some bankruptcy proceedings in San Francisco, and that its definite location of business was somewhat uncertain or unknown, or at least it was unknown to plaintiffs' attorneys. The court found the defendant was duly served with notices pursuant to the terms of the leases, which provided:

"Any notice required to be given by law shall be in writing and may be given by personal delivery or by registered mail, addressed to lessee at the demised premises, whether or not lessee has departed from, vacated or abandoned the premises, or at his place of business . . . or to either of them in any other manner prescribed by law."

Plaintiffs strictly followed the provisions of the leases as to where to send notices and as to what notice, if any, was required under the circumstances. The evidence sustains the finding of the trial court and the time element cannot be said to be unreasonable under the circumstances, particularly where plaintiffs informed defendant in December that thereafter all rental payments must be made on the dates due. (*Andrews* v. *Russell*, 85 Cal.App. 149 [259 P. 113]; *Universal Milk Co.* v. *Wood*, 205 Cal. 751 [272 P. 745].)

Under the terms of the leases, in case of default in payment of rent, plaintiffs were entitled to take possession of the

premises and remove defendant's property therefrom. Defendant's agent was notified by plaintiffs' attorney that if arrangements were not otherwise made such merchandise would be removed the following Monday. Apparently, proper arrangements were not made and plaintiffs rightfully removed it, and the cost thereof was a proper charge under the lease agreements. Likewise, under the leases, attorneys' fees were properly allowed.

It appears that there was some use of the premises leased to this defendant by plaintiffs in temporarily storing certain goods on the mezzanine floor as well as on the third floor. There was also some reference to an existing sign for which plaintiffs were receiving rental, and which plaintiffs agreed to remove when defendant arranged to completely take over the mezzanine floor for the purposes desired. It appears that defendant did not completely take over the mezzanine floor and did not make any other arrangements in reference to this space and apparently made no particular complaint about such sign. However, in its cross-complaint it asked to be given credit for the reasonable value of this sign to the plaintiffs during this leasehold period, and for the reasonable value of storage space occupied by plaintiffs, which defendant contended was unauthorized. It appears from the evidence that some discussion was had in reference to this at the time, and that some settlement was made. The record shows that defendant was allowed one month's rent, i.e., $250 for this benefit. It does not appear that, until the trial of this action, any further claim was made, and for all intents and purposes, the court was justified in believing that the parties had agreed upon their differences in this respect.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied April 27, 1954, and appellants' petition for a hearing by the Supreme Court was denied May 27, 1954.