[Civ. No. 20112. Second Dist., Div. One. May 17, 1954.]

L. A. LEITER et al., Appellants, v. WILLIAM J. HANDELSMAN et al., Respondents.

Elwood Bowles and Fred L. Brown, Jr., for Appellants.

Morris C. Schrager for Respondents.

MOSK, J. pro tem.*—Appellants L. A. Leiter and Ralph Cogan owned Lot 215, Tract 13796, county of Los Angeles, and appellants Daniel D. Aberle and Virginia R. Aberle owned Lot 216 in the same tract. Both parcels were registered under the Land Title Law (Torrens Title).

On February 24, 1950, the four owners executed an agreement to sell their respective lots to the four respondents, William J. Handelsman, Lillian M. Handelsman, Al Kahan and Essie L. Kahan, for the sum of $33,000. On February 28, 1950, an escrow was opened at the Florence White Escrow Company, instructions being signed by all parties.

The sum of $1,000 was deposited in the escrow the day it was opened by A. Lee Elkins, the broker handling the transaction, and the sum of $5,000 was deposited on March 6, 1950, by respondent Handelsman. Properly executed deeds were deposited in the escrow by the appellants on February 28, 1950.

The original purchase agreement provided that the "Purchase price to be paid in cash in escrow on delivery of deed free and clear title, there is no bonds—if deal is not accepted money will be refunded—no bonds—no assessments—no easement. Evidence of title was to be in form of a policy of title insurance issued by a responsible title company and to be furnished and paid for by the sellers."

The escrow instructions provided that it was to be completed "on or before 30 days" from February 28, 1950.

On March 13, 1950, the escrow company informed the purchasers that a preliminary title report had been received. A day or so later respondent Handelsman read the report in the escrow company office and advised the escrow holder and broker Elkins that he and his associates would not accept the property with the reported easement thereon. The title company report showed an easement running 30 feet into the property in favor of the Southern California Edison Company and the Pacific Telephone and Telegraph Company. In addition there were guy wires physically located on the land.

The appellant Leiter and broker Elkins both admitted in their testimony they were informed during negotiations that respondents desired the property for the purpose of constructing a market building and they realized it would be impossible to construct a building if the wires and the easement were retained.

*Assigned by Chairman of Judicial Council.

On or about March 30, the escrow company notified appellants that the respondents objected to the easement indicated in the preliminary title report. The following day the appellants employed an attorney for the purpose of assisting in clearing title so that the transaction might be completed.

Appellants' counsel proceeded expeditiously to persuade the utility companies to remove the wires and the easement, but the processing of the proposed quitclaim deed was not accomplished immediately.

Meanwhile, the respondents contacted the escrow company "every two or three days to see if the easement was removed." When it was not removed by April 17, 1950, respondents, through their counsel, sent a notice to the escrow company cancelling the escrow and demanding return of the $6,000 on deposit. The escrow holder immediately notified appellants by letter, stating therein that it would retain all funds and documents on hand for another five days.

On April 18, appellants' counsel called respondents' attorney and advised him that the guy wires had then been removed and that a quitclaim deed would be forthcoming. On April 26, the quitclaim deed was executed by the Southern California Edison Company and recorded May 9th. Pursuant to the demand of respondents the escrow was promptly closed and the deposited money and documents returned to the respective parties.

The easement in question purportedly was running in favor of the Southern California Edison Company and the Pacific Telephone and Telegraph Company. The quitclaim deed of April 26, 1950, was apparently that of the Edison Company only. There is nothing in the record before us to indicate how, or whether, the easement of the telephone company was extinguished. However, since neither party raises any issue on that subject, we will assume the telephone company rights and those of the Edison Company arose and expired simultaneously.

Appellants contend that the easement was not an encumbrance on the real property and therefore respondents lacked valid excuse for failure to perform. They have therefore brought this action seeking damages for breach of the contract to purchase. From an adverse determination in the trial court they have pursued this appeal.

The two lots were registered under the Land Title Law of California. Act 8589, Statutes of 1915, page 1932.

Section 42 of the act provides in part as follows: "The

register of any land, and duly certified copies thereof, shall, except as herein otherwise provided, be received in law and in equity as evidence of the facts therein stated, and as conclusive evidence that the person named therein as owner is entitled to the land for the estate or interests therein specified."

Section 34 of the act provides in part as follows: "The registered owner of any estate or interest in land brought under this act shall, except in case of fraud to which he is a party, or of the person through whom he claims without valuable consideration paid in good faith, hold the same subject only to such estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the registrar's office, and free from all others, except: . . . (3) Any subsisting right of way or other easement, created within one year before issue of the certificate upon, over, or in respect of the land."

Lots 215 and 216, involved herein, were first registered under the act on April 1, 1924. The grant of easement was dated October 24, 1947, and recorded on January 30, 1948. The foregoing sections of the act fortify appellants' assertion that this purported easement should not be an objectionable encumbrance upon the property. As stated in *Estate of Allan*, 28 Cal.App.2d 181, 184 [82 P.2d 190], "a certificate of ownership issued by the registrar of titles is conclusive evidence of the title as therein stated."

Testimony of the Chief of Land Registration of the county of Los Angeles established there was no record of easements on either lot.

 Nevertheless, the existence of the easement was reported by the title insurance company as a cloud upon the title. Any such cloud would clearly affect the merchantability of the property. The parties herein contemplated in the purchase memorandum that there were to be "no bonds—no assessments—no easement," not merely easements recorded under the Torrens Title Law.

Further, they did not contemplate validity of title to be ascertained only by the Land Title Law but "evidence of title was to be in form of a policy of title insurance issued by a responsible title company." This is not an unusual requirement, as indicated by *King* v. *Stanley*, 32 Cal.2d 584, 590 [197 P.2d 321], in which the court said that title insurance "is a reasonable method by which a vendee may determine the merchantability of the vendor's title . . ."

In *Ward* v. *Downey*, 95 Cal.App.2d 680 [213 P.2d 523], there is a remarkable factual similarity. The instruments there were a purchase agreement calling for marketable title, and escrow instructions providing that if performance had not been completed within the specified time, the escrow was to continue open unless written demand to close had been made. The cloud on the title was no recorded instrument, but merely the title company's conclusion that there was a possibility of an inheritance tax and federal estate tax becoming due. This possibility alone convinced the court there was (p. 685) "a defect in the title . . . which made it unmarketable within the meaning of the terms of the offer to purchase. If there were any reasonable doubt relative to litigation regarding the title, then the property was not 'marketable.' "

In *Culligan* v. *Leider*, 65 Cal.App.2d 51 [149 P.2d 894], it was held that if there was "any reasonable doubt" of the title, then the property was not marketable and the purchaser was entitled to return of his deposit. To the same general effect are *Muller* v. *Palmer*, 144 Cal. 305 [77 P. 954]; *Allen* v. *Globe Grain & Milling Co.*, 156 Cal. 286 [104 P. 305]; *Gwin* v. *Calegaris*, 139 Cal. 384 [73 P. 851].

The evidence discloses that appellants themselves considered the easement to be a reflection upon their title. This is indicated first by the efforts they made to remove it. And secondly, after the escrow was closed, appellants filed suit against the Southern California Edison Company and the Pacific Telephone and Telegraph Company for slander of title and in their verified complaint in that lawsuit alleged that the prospective purchasers "withdrew from said escrow and refused to complete the transaction because of the said cloud on the title to said real property." That lawsuit was ultimately settled when the utility companies compromised and paid to appellants the sum of $3,000.

Appellants next urge that there was a waiver by respondents of the time limit fixed in the escrow instructions for performance, and that after this waiver a "notice terminating the waiver" and allowing a reasonable time for performance by appellants was necessary.

Whether there has been a waiver is ordinarily a question of fact to be considered under all of the evidence. (*Lyons* v. *Brunswick-Balke etc. Co.*, 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173]; *Jolin* v. *Spira*, 94 Cal.App.2d 356, 360 [210 P.2d 704]; *Boyd* v. *A. E. J. Chivers Co.*, 134 Cal.

App. 566, 569 [25 P.2d 878]; *Black* v. *Arnold Best Co.,* 124 Cal.App.2d 378 [268 P.2d 513].)

The cases cited by appellants all involved factual situations justifying findings that there were waivers of the "time is of the essence" condition. None of them categorically asserts this to be a question of law.

In *Chin Ott Wong* v. *Title Ins. & Trust Co.,* 89 Cal.App.2d 183 [200 P.2d 541], decided by this court, performance of a real property sale agreement was to be completed by May 29, 1946. The plaintiff's own complaint alleged that on July 15 certain supplemental agreements were entered into. This court therefore found that the complaint affirmatively revealed the transaction to be pending long after the date to which the time-essence condition was to apply. Clearly this constituted a waiver.

*Chin Ott Wong* was retried and thereafter went to the Supreme Court, to be known as *Chan* v. *Title Ins. & Trust Co.,* 39 Cal.2d 253 [246 P.2d 632]. Here again the court found that the transaction was still pending long after the time limit set in the escrow instructions, and that under those facts the time clause must be deemed to have been waived.

*Lifton* v. *Harshman,* 80 Cal.App.2d 422 [182 P.2d 222], was somewhat comparable, although the court there noted that time was not declared to be of the essence of the contract. (P. 433.) The escrow was to be completed within 30 days. Three days after expiration of the 30-day period, the seller deposited money in the escrow to be used toward eliminating encumbrances; thereafter she attempted to declare the purchaser's default. The court found her action to constitute a waiver of strict compliance with the date of completion.

In *Tuffin* v. *Warfield,* 72 Cal.App. 282 [237 P. 64], the purchasers actually took possession prior to the time-essence date specified in the contract. After the date had passed without full performance of the sellers' agreed obligations, the purchasers not only remained in possession of the land, but they cultivated it, made improvements thereon, and subsequently wrote a letter admitting the continued existence of their obligation to pay. Surely, said the court, these acts constituted a waiver.

The element of waiver is discussed in an entirely different context in *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935], although parenthetically it may be noted there is disapproval of holding specified conduct to be a waiver as a

matter of law "without regard to the circumstances under which it is made."

There are two instruments involved here, the agreement of purchase, and the escrow instructions. ■ Where the terms of an executory agreement for the sale of real property are clarified by the provisions of signed escrow instructions, both instruments are to be considered together in determining the understanding of the parties and in ascertaining their rights and obligations. (*Katemis* v. *Westerlind*, 120 Cal.App.2d 537 [261 P.2d 553]; *Keelan* v. *Belmont Co.*, 73 Cal.App.2d 6, 12 [165 P.2d 930].) ■ Escrow instructions are customary and expected directions to carry into effect an executory agreement. (*King* v. *Stanley, supra.*)

The agreement of purchase provided that "time is of the essence of this contract, but the time for any act required to be done may be extended not longer than thirty days by the undersigned agent." The escrow instructions contained the following: "In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest date possible thereafter, unless we or either of us shall have made written demand upon you for the return of the money or instruments deposited by either of us; in which case you are instructed to return all instruments and/or cash to the respective parties hereto . . ."

■ The general rule is that time is not of the essence unless it has been made so by the express terms of a contract or is necessarily so from the very nature of the contract. (*Katemis* v. *Westerlind, supra.*) ■ In order to render time thus essential, it must be shown in clear, unequivocal and unmistakable language. (*Miller* v. *Cox*, 96 Cal. 339 [31 P. 161].)

*Katemis* held a purchase agreement clause, comparable to the one in the instant case, to indicate performance on the specified date was not of crucial significance to the vendee. This was deduced from the permissive power of a mere agent to extend performance of any act for 30 days without notice.

It should be appreciated, however, that factually *Katemis* was an exaggerated case. There the instrument provided for performance on March 1, 1952. A check in full was mailed February 29, and because of an intervening weekend, did not arrive until March 3d. On March 5th, cancellation of the escrow was demanded for failure to have completed the transaction by the 1st.

In this case we have no such marginal miscalculation. The escrow was to have been completed 30 days after February 28, 1950. Not until after that period had expired were efforts made to eliminate the easement and the guy wires. On April 17, respondents demanded their money be returned. On the following day, April 18, counsel for appellants informed respondents' counsel the wire had been removed, but not until April 26 was a quitclaim deed for the easement delivered to the title company.

Assuming nevertheless, but not necessarily deciding, that *Katemis* is controlling and that time was not of the essence here, we come next to the escrow instructions. They provided for performance within 30 days, but if not completed then, the period was extended to "the earliest date possible thereafter."

That "earliest date" conceivably could be prolonged to many years distant were it not for the further protective qualification: "unless we or either of us shall have made written demand" for return of the money or instruments.

The right to make written demand for return of the money or instruments was an integral, clear and unequivocal clause in the instructions. Even if time was not of the essence, and even if it could be found that there had been a waiver of the precise time of performance, nowhere has it been suggested in the evidence or in argument that respondents waived their right to make written demand for return of their money after the 30-day escrow period concluded. Were they to be denied that right, the court in effect would be altering the express terms of the contract. Neither a trial nor appellate court has the power to rewrite a contract.

Where time is not of the essence of an instrument, compliance within a reasonable time after the specified due date constitutes compliance therewith. (*Walsh* v. *Walsh,* 42 Cal.App.2d 287, 292 [108 P.2d 765]. *Milton Realty Co.* v. *Butterfield,* 87 Cal.App. 772, 776 [262 P. 419].)

What constitutes reasonable time is always a question of fact. In this instance it is limited to that time after the 30-day escrow period and before written demand upon the escrow company pursuant to terms of the instructions.

There is language in some cases, notably *Chan* v. *Title Ins. & Trust Co., supra,* suggesting that after a waiver, or when the date originally provided for performance has passed without decisive action, a definite notice demanding performance by another reasonable and specific date is required.

This question was decided in *Weaver* v. *Casad,* 86 Cal.App. 2d 593 [195 P.2d 81]. The escrow instructions there required all acts to be performed .in 90 days and "that if not so done the escrow could be cancelled on written notice to the escrow holder at any time thereafter." The acts were incomplete at the end of 90 days and written notice to cancel was given to the escrow holder. Said the court (p. 595) : "No further notice was required as the escrow instructions were controlling in this regard."

Though not required by any instrument to do so in ,this case, the escrow holder did send a five-day notice to the sellers. While the notice was not in the form of a demand for performance, it did unequivocally advise that the purchasers had exhausted their patience and had demanded close of the escrow. At the expiration of the five days the Edison Company quitclaim still had not been executed.

While the evidence does not reflect that the sellers were dilatory in any respect, 'all of the events indicate with equal perspicuity that the purchasers acted in good faith, and not arbitrarily. They proposed to purchase clear title to real property. Within a reasonable time after the specified date clear title was not offered to them. The trial court properly determined those circumstances did not create liability.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied June 7, 1954.