[No. B219867. Second Dist., Div. Six. Feb. 22, 2011.]

B. MICHAEL GOULD, Plaintiff and Appellant, v.
CORINTHIAN COLLEGES, INC., Defendant and Respondent.

**COUNSEL**

Philip D. Dapeer for Plaintiff and Appellant.

Green LLP and Todd A. Green for Defendant and Respondent.

**OPINION**

**GILBERT, P. J.**—A lease contains an antiwaiver provision. Yet, we conclude the lessor waived certain rights under the lease, even if the antiwaiver provision applies. There is a simple explanation for this seeming paradox. Lessor, the party arguing waiver, waived the clause prohibiting waiver.

This case arises from a commercial lease. The lease contains an early termination provision allowing the lessee to terminate the lease prior to the

end of the term. Lessor seeks a declaration that lessee did not properly exercise its early termination right, and thus lessee's obligations under the lease continued.

We uphold the trial court's ruling that lessor waived defects in lessee's performance of the early termination provision; thus the lease had terminated. We conclude that the trial court erred, however, in refusing to allow lessor's evidence of damages relating to the condition of the premises. We remand for a trial limited to such damages.

## FACTS

B. Michael Gould owns a commercial building. He leased the premises to his wholly owned corporation, Learning Tree University, Inc. (Learning Tree).

Paragraph 5 of the lease provides for a security deposit of $24,165. The lease provides in part: "No part of this Security Deposit shall be considered . . . to be prepayment for any monies to be paid by Lessee under this lease."

On January 1, 2003, Learning Tree assigned the lease to Corinthian Colleges, Inc. (Corinthian). The transaction included a lease amendment providing that the lease would terminate on November 30, 2009. The amendment also granted Corinthian the right to terminate the lease four years early on November 30, 2005.

To exercise its right of early termination, Corinthian had to satisfy four conditions: (1) give Gould at least six months' written notice prior to the early termination date; (2) terminate its operations on the premises on or before the early termination date; (3) pay Gould $136,500 "in cash or other immediately available funds" upon delivery of the termination notice; and (4) pay Gould $136,500 "in cash or immediately available funds" on or before the early termination date. It is the fourth condition of early termination that gives rise to the dispute. Corinthian paid $136,500 upon delivery of the early termination notice. It made its final payment by giving Gould a check for $120,057.10 and applying $16,442.90 of its security deposit, for a total of $136,500. Corinthian left the $7,722.10 balance of the security deposit to cover invoices, but disputed common area maintenance charges.

Gould responded by letter, asserting that Corinthian breached the lease by applying a portion of the security deposit to the termination payment, and that Corinthian has not made the termination payment in full. He did not tender return of the early termination payments received.

Gould filed an action for declaratory relief. He sought a judgment declaring that Corinthian failed to exercise its right of early termination, and is bound by the lease for the balance of the term.

Trial was by the court. After Gould rested, Corinthian moved for judgment. The trial court granted the motion and gave declaratory judgment in Corinthian's favor. It refused to consider evidence of damages relating to the condition of the premises.

The trial court found that applying a portion of the security deposit satisfied the requirement that payment be made in "cash or immediately available funds"; that Corinthian substantially complied; and that Gould waived any noncompliance by keeping the early termination payments.

## DISCUSSION

## I

Gould contends that Corinthian has forfeited its right to early termination of the lease. He points out that paragraph 5 of the lease provides that the security deposit cannot be considered as prepayment for any monies to be paid by lessee under the lease. Thus Corinthian had no right to tender a portion of the security deposit as partial payment for early termination.

But the $16,442.90 tendered from the security deposit is only a small portion of the $273,000 early termination payment. The trial court found Gould waived compliance with the lease terms when he kept all the payments.

Waiver is a question of fact for the trial court. (*Black v. Arnold Best Co.* (1954) 124 Cal.App.2d 378, 384–385 [268 P.2d 513].) Waiver is an intentional relinquishment of a known right. (*Salton Community Services Dist. v. Southard* (1967) 256 Cal.App.2d 526, 532 [64 Cal.Rptr. 246].) It may be implied through conduct manifesting an intention to waive. (*Id.* at pp. 532–533.) Acceptance of benefits under a lease is conduct that supports a finding of waiver. (*Id.* at p. 533.)

Here Gould accepted and retained the benefit of the early termination payments. He cannot now claim that Corinthian forfeited the right to the early termination the payments were intended to provide. Gould simply waived any defect in Corinthian's performance of the early termination provision.

Gould argues the lease prohibits waiver. He points to paragraph 4.3 of the lease which provides in part: "Acceptance of a payment which is less than the

amount then due shall not be a waiver of Lessor's rights to the balance of such Rent . . . ." He also points out that paragraph 4.1 of the lease defines rent as "all monetary obligations of the Lessee to the Lessor under the terms of this lease."

But even without a waiver early termination payments are not an "obligation" under the lease. They are payments for the exercise of a right or privilege. Had Corinthian made no such payments, it would not have been in breach of the lease. The lease would simply have continued. Nothing in the lease prohibits waiver of defects in Corinthian's performance of the early termination provision.

In any event, the court found the lessor waived strict performance of the early termination provision. And Gould cites no authority that an antiwaiver provision in a lease cannot itself be waived. Certainly, an antiwaiver provision would militate against a finding of waiver under most circumstances. But here Corinthian paid Gould $256,000 of the $273,000 due for early termination, in addition to releasing approximately $16,000 of its security deposit. For Gould to keep the money and claim it does not constitute waiver is absurd, not to mention unconscionable.

Gould argues that he is applying the early termination payments to rent that became due after the November 30, 2005, early termination date. But he cites no authority giving him the right to apply early termination payments for any other purpose.

■ Gould argues Corinthian cannot rely on waiver because it failed to plead waiver as an affirmative defense. (Citing *California Academy of Sciences v. County of Fresno* (1987) 192 Cal.App.3d 1436, 1442 [238 Cal.Rptr. 154].) But Corinthian gave clear notice in its trial brief that it was relying on waiver. Where a case is tried on a particular theory, defects in pleading the theory will be ignored. (See *Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 392 [196 Cal.Rptr. 117].)

Gould's argument captures neither common sense nor reason. It illustrates the meaning of the phrase, "clever by half," believed by linguists to have originated in England, as in "Pshaw! he is too moral by half."[1] (Sheridan, The School for Scandal, act IV, scene 3.) A colloquial American cousin is the reductive phrase, "Gotcha," to which lessee may justifiably respond in like fashion, "No Yadon't."

---

[1] " 'Too clever by half' " (Whyte-Melville, The Interpreter: A Tale of the War (1858), republished Cornell Univ. Library (2009) p. 370).

## II

Gould contends the trial court failed to issue a tentative decision and statement of decision as required by Code of Civil Procedure sections 631.8 and 632 and California Rules of Court, rule 3.1591.

The trial court ordered both parties to submit a proposed statement of decision with their posttrial briefs. Corinthian's proposed statement was received by the trial court on July 6, 2009. The court granted judgment to Corinthian on July 8, 2009. Thereafter, Gould moved to vacate the judgment and for a new trial. On September 25, 2009, the court denied Gould's motions and signed and filed its statement of decision.

Gould has the burden to show not only error, but also prejudice arising from the error. (*In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 [187 Cal.Rptr. 200].) Here Gould fails to show prejudice arising from any error in the court's procedure.

## III

Gould argues the trial court erred in failing to consider his claim for damages for breach of the lease.

The caption on Gould's complaint states only "Complaint for Declaratory Relief." There is no separately stated cause of action for damages. Nevertheless, the body of the complaint states that there are conflicts and disputes between the parties as evidenced by exhibit C. Exhibit C is a letter from Gould to Corinthian. The letter alleges Corinthian breached the lease by failing to remove its alterations to the building and lists other items of damage relating to the condition of the premises, including bathroom leaks and damaged ceiling tiles. The letter states that $23,877.14 has been deducted from Corinthian's security deposit.

The complaint alleges in part: "As a direct and proximate result of defendants' wrongful conduct in breach of the lease agreement, plaintiff has been damaged in a sum subject to proof at trial, in an amount in excess of $50,000." In addition to declaratory relief, the complaint prays "For consequential and incidental damages subject to proof at trial."

Corinthian points out that Gould's complaint contains only a single cause of action headed "Declaratory Relief," and his "Case Management Statement" and trial brief state only that the action is for declaratory relief. Indeed, under the heading "Provide a brief statement of the case, including any damages," Gould's Case Management Statement asks the court to declare

only that Corinthian has failed to exercise its right of early termination and that the lease is still in effect. There is no indication that Gould is seeking any damages. Gould's trial brief describes the action in a manner similar to the description in his Case Management Statement. Only in the "Conclusion" portion of his trial brief does Gould mention damages.

It is quite understandable how the trial court and Corinthian could conclude Gould was not seeking damages. His complaint is anything but a model of pleading and his Case Management Statement and trial brief are misleading at best. Nevertheless, Gould's complaint, liberally construed, is sufficient to apprise Corinthian that he was seeking damages as well as declaratory relief. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 976, p. 389.)

Gould is entitled to a trial on the question of damages relating to the condition of the premises.

The matter is reversed and remanded for a trial limited to the issue of damages relating to the condition of the premises. In all other respects the judgment is affirmed. Costs on appeal are awarded to respondent.

Yegan, J., and Coffee, J., concurred.