Filed 1/22/24  Tsang v. Engelberg CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for pur- poses of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELLEN TSANG, as Trustee, etc.,<br><br>        Cross-complainant and Appellant,<br><br>v.<br><br>CHARLES ENGELBERG,<br><br>        Cross-defendant and Respondent. | A167276<br><br>(San Francisco City & County Super. Ct. No. CGC-13-532835) |

Plaintiff Ellen Tsang, acting as trustee for the Arza Trust, filed a cross-complaint that alleged trespass and nuisance causes of action against her neighbor Charles Engelberg.  The trial court concluded, after a bench trial, that Tsang had proven neither cause of action.  Tsang appeals from the judgment entered in Engelberg's favor and from a postjudgment order denying her motion for new trial.  We conclude that she has failed to meet her burden on appeal to show error and affirm.

**BACKGROUND**

**A.**

In 1997, Engelberg bought a house on North Point Street in San Francisco.  Tsang lives in the building next door, which is owned by the Arza Trust.  Tsang is the successor trustee.  The west wall of Engelberg's home and the east wall of Tsang's home

1

abut the lot line. Engelberg's exterior front gate—which is perpendicular to the lot line—similarly abuts a retaining wall that Tsang claims is completely on her side of the property line.

The two neighbors' proximity has led to reoccurring discord, especially when it comes to the cooperation needed to make repairs. In 2013, Engelberg filed a complaint that sought equitable and legal relief against Tsang—for alleged intentional infliction of emotional distress and nuisance—after he tried to repair his home's siding.[1] In response, Tsang filed a cross-complaint that sought damages for Engelberg's alleged trespass and nuisance.

Things came to a head again in 2019. For some time before the events at issue in Tsang's operative cross-complaint, Engelberg's front gate had not been functioning optimally—it stuck and took excessive effort to close. In May 2019, Engelberg hired E.R. to fix the gate. On May 30, 2019, Tsang observed (and photographed) E.R. touching (and resting tools) on the east portion of the retaining wall. She later discovered that metal fixtures, bolts, and holes had been left behind on that eastern portion of the retaining wall. Tsang alleged two causes of action—for trespass and nuisance—that arise out of that work.

## B.

The matter proceeded to a bench trial. At trial, the evidence focused on the events that occurred on May 30, 2019, whether (and to what extent) the retaining wall was damaged as a result of those events, the noise and vibration caused by Engelberg's continued slamming of his gate, and whether the entirety of the retaining wall sits exclusively on Tsang's side of the property line.

---

[1] In 2015, Engelberg dismissed (with prejudice) his complaint against Tsang.

2

It appears that the only real disputes concern whether the retaining wall was damaged and where that wall sits in relation to the property line.  Tsang presented the expert testimony of Steven Viani, a licensed civil engineer, who opined both on the costs to repair the damaged retaining wall ($14,632) and its location.  Although Viani testified that he was legally authorized to conduct land surveys because he had passed an engineering exam in 1979, he admitted (on cross-examination) that he was not a licensed land surveyor.

Using a fiberglass tape measure and a survey map created by Engelberg's land surveying expert, Viani measured the distance between the eastern-most portion of the retaining wall and a known monument at the corner of Hyde and North Point.  As a result of his measurement, Viani determined that the entirety of the retaining wall was within the boundaries of the trust's property line.  On cross-examination, Viani testified that he would use different equipment, such as a Total Station, when he conducts his next survey because it would provide a more precise measurement.

Engelberg's land surveying expert, James Moran, who is a licensed land surveyor, testified that a survey—prepared by him and his company's employees—established that the retaining wall extends two and one-half inches over the property line onto Engelberg's property.  Tsang objected—on hearsay and *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) grounds—to admission of Moran's survey itself and to Moran relaying any measurements he had not personally made or observed.  The trial court overruled these objections and admitted the survey into evidence.

## C.

After hearing the testimony, considering the exhibits admitted into evidence (numbering more than 25), and reviewing counsel's trial briefs, the trial court concluded that Tsang had not

sustained her burden to prove either cause of action. In its written order after trial, the court explained that it found "Moran's testimony as a professional land surveyor persuasive." The court entered judgment in Engelberg's favor and denied Tsang's motion for new trial.

## DISCUSSION

Tsang argues that the trial court abused its discretion in admitting Moran's survey and allowing Moran to relay case-specific hearsay in support of his expert opinion, that the trial court erred in denying her motion for new trial, and that the evidence compelled judgment in her favor. We disagree.

### A.

As an appellate court, we must presume the trial court's judgment is correct. The appellant bears the burden of *affirmatively* demonstrating both error and prejudice arising from such error. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; *Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1181.) To do so, the appellant must provide an adequate record (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348) along with reasoned and intelligible legal argument supported by references to the record and pertinent authority. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)

Here, Tsang elected to provide a record of the documents filed in the superior court via an appendix, pursuant to California

4

Rules of Court, rule 8.124.[2]  But her appendix lacks much of what is required by the rules.  Specifically, an appellant's appendix is required to contain "[a]ll items required by rule 8.122(b)(1), showing the dates required [to determine the timeliness of the appeal.]"  (Rules 8.122(b)(2), 8.124(b)(1)(A).)  The items required by rule 8.122(b)(1) include any "judgment appealed from and any *notice of its entry*," any notice of intent to move for new trial, and the register of actions.  (Rule 8.122(b)(1)(B), (D), (F), italics added.)

Although Tsang provides us with the judgment and order denying her motion for new trial, she fails to provide us with the register of actions, the notice of entry of judgment, or her notice of intention to move for new trial.  As a result of these gaps, we are unable to properly determine whether, as is required for appellate jurisdiction, Tsang's notice of appeal was timely filed.  (See rules 8.104(a), 8.108(b); Code Civ. Proc., § 659, subd. (a)(2); *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 ["appellate court has no power to entertain [an untimely] appeal"].)

Rule 8.124(b)(1)(B) also requires an appellant's appendix to contain "[a]ny item listed in rule 8.122(b)(3) that is necessary for proper consideration of the issues, including . . . any item that the appellant should reasonably assume the respondent will rely on."  This includes any exhibit admitted in evidence that is necessary for proper consideration of the issues.  (Rules 8.124(b)(1)(B), 8.122(b)(3)(B).)  "[A]ll exhibits . . . are deemed part of the record" (rule 8.124(b)(4)), but we do not receive any unless they are included in an appendix (rule 8.124(b)(1)(B), (c)), or they are transmitted pursuant to rule 8.224.

---

[2] Undesignated rule references are to the California Rules of Court.

Despite these rules, Tsang's appendix fails to include the parties' trial briefs, motions in limine, Engelberg's opposition to her motion for new trial, and properly marked copies of exhibits admitted at trial.[3]  Tsang's appendix does purport to include five exhibits she moved into evidence and one of Engelberg's exhibits. However, many of the purported exhibits included in the appendix are poorly identified—as they lack exhibit markings altogether or, in some instances, contain markings that do not match Tsang's identification.  We do not know whether the documents provided are accurate copies of the exhibits admitted by the trial court.

For the above reasons, the record fails to provide an adequate basis for meaningful review of the trial court's judgment and order denying motion for new trial.  Accordingly, they are both presumed to be correct and must be affirmed.  (*Gee v. American Realty & Construction, Inc., supra,* 99 Cal.App.4th at p. 1416.)

## B.

In any event, the record we have before us compels us to reject Tsang's primary argument on the merits.  Tsang insists the judgment must be reversed because the trial court allowed Engelberg's expert on land surveying (Moran) to disclose inadmissible, case-specific hearsay in violation of *Sanchez, supra,* 63 Cal.4th 665.  The trial court did not abuse its discretion.  (See *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*) [standard of review].)

---

[3] Because Tsang's appendix does not include the required register of actions (rules 8.122(b)(1)(F), 8.124(b)(1)(A)), we only learned of the existence of some of these missing documents from independently reviewing the trial court's web site.

6

**1.**

In relevant part, *Sanchez* clarifies the proper application of Evidence Code sections 801 and 802 to expert testimony.[4] (*Sanchez, supra*, 63 Cal.4th at p. 670.) *Sanchez* bars an expert from relating "as true case-specific facts asserted in hearsay statements, *unless* they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686, italics added.) "When any expert relates to the jury case-specific *out-of-court statements*, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth." (*Ibid.*, italics added.)

The *Sanchez* court's construction of state evidentiary rules has been held to govern the admissibility of expert testimony in civil proceedings and bench trials. (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 9-10 [bench trial on civil nuisance action]; *People v. Bona* (2017) 15 Cal.App.5th 511, 515.)

**2.**

Tsang does not identify any out-of-court statements (§ 1200) that are inadmissible under the hearsay rule.

Regarding the first level of hearsay, we agree with Engelberg that the trial court did not abuse its discretion in concluding that the survey qualified for admission under the business records exception to the hearsay rule (§ 1271). Moran testified that the survey was created in the regular course of his surveying business (as were the recorded measurements), at or near the time of the event recorded, by persons whose job it was to create the records. (See § 1271.) Moran also testified that he himself both oversaw creation of the survey, stamped it, and

_____

[4] Undesignated statutory references are to the Evidence Code.

7

conducted (in 2014, together with company technicians) the first of two sets of underlying measurements in the field. Although Moran was not present when, in 2021, technicians returned to Engelberg's property to electronically collect (pursuant to Moran's directions) further measurements, he testified that the later data agreed with the previous measurements.

Tsang suggests more is required to satisfy the business records exception—that because Moran did not prepare the survey alone, the company's technicians were also required to testify. She cites no authority for this proposition. The authority is to the contrary. For a business record to be admissible under the exception, the testifying witness need not be the custodian, the person who created the record, or one with personal knowledge of the transaction, so long as there is evidence about the record's mode of preparation and its source of information. (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322.) Moran's testimony easily satisfies this standard.

Tsang's real concern appears to be with the second level of purported hearsay—the underlying measurement data contained within the survey. First, we observe that *Sanchez* likely has no application here because the only part of an expert's testimony that may be excluded as hearsay "is that relating 'case-specific facts *about which the expert has no independent knowledge.*' " (*People v. Veamatahau* (2020) 9 Cal.5th 16, 26, some italics added and some italics omitted, quoting *Sanchez, supra*, 63 Cal.4th at p. 676.) Given Moran's testimony about his involvement in taking the 2014 field measurements, which "agreed" with the 2021 measurements, it is far from clear that he lacks personal knowledge of any measurement relayed to the court or contained within the survey. Tsang certainly fails to meet her burden to affirmatively demonstrate as much.

However, even if we assume that Moran lacks personal knowledge of at least one (unidentified) case-specific

8

measurement that was relayed to the court, we conclude the trial court did not abuse its discretion in admitting it. The trial court stated that the measurements at issue were not hearsay, relying on the rule that electronically generated data is not a statement of a person. (See Simons, Cal. Evidence Manual (2023) § 2:2, pp. 78-80; Evid. Code, §§ 225, 1200; *Goldsmith, supra,* 59 Cal.4th at p. 274 [" '[t]he Evidence Code does not contemplate that a machine can make a statement' "]; *People v. Lopez* (2012) 55 Cal.4th 569, 583.)

In her opening brief on appeal, Tsang barely grapples with the trial court's reasoning. She merely attempts to distinguish the authority the court relied on by asserting (without any citation to the record) that the measurements taken in this case "were not machine-generated raw data."

This does not meet her burden to affirmatively demonstrate an abuse of discretion. (*Nwosu v. Uba, supra,* 122 Cal.App.4th at p. 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived' "].) Moran testified that the equipment he and his technicians used (Trimble Total Stations) are instruments that use an electronic beam to measure distances and angles, and that the data is recorded electronically by the instrument itself and then electronically imported into the survey. There *might* be a human role or statement implicit in taking electronic measurements using a Trimble Total Station that would distinguish this case from the computer-generated information at issue in *People v. Lopez, supra,* 55 Cal.4th at p. 583 and *Goldsmith, supra*, 59 Cal.4th at p. 274. However, Tsang failed to develop either her opening brief or the record below to affirmatively establish as much.

We need not and cannot consider Tsang's additional arguments.

## DISPOSITION

The judgment and order denying Tsang's motion for new trial are affirmed.  Engelberg is entitled to his costs on appeal. (Rule 8.278(a)(1), (2).)

BURNS, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

*Tsang v. Engelberg* (A167276)